1  TRACY L. WILKISON
   United States Attorney
2  CHRISTOPHER D. GRIGG
   Assistant United States Attorney
3  Chief, National Security Division
   MARK TAKLA (Cal. Bar No. 218111)
4  ANNAMARTINE SALICK (Cal. Bar No. 309254)
   WILSON PARK (Cal. Bar No. 239527)
5  Assistant United States Attorneys
   Terrorism and Export Crimes Section
6       United States Attorney's Office
        411 West Fourth Street, Suite 8000
7       Santa Ana, California 92701
        Telephone: (714) 338-3500
8       Facsimile: (714) 338-3561
        Email:     mark.takla@usdoj.gov
9                  annamartine.salick2@usdoj.gov
                   wilson.park@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        No. SA 19-CR-047-JLS

15         Plaintiff,               GOVERNMENT'S MOTION *IN LIMINE* TO
                                    INTRODUCE FOREIGN RECORDS;
16         v.                       DECLARATION OF ANNAMARTINE SALICK

17 STEPHEN WILLIAM BEAL,            Hearing Date:  January 14, 2022[1]

18         Defendant.

19

20      Plaintiff United States of America, by and through its counsel

21 of record, the United States Attorney for the Central District of

22 California and undersigned counsel, hereby respectfully submits

23 this motion in limine to introduce foreign records pursuant to 18

24 U.S.C. § 3505(b) and Federal Rules of Evidence 104.

25

26

27      [1] For the reasons stated below and in the government's unopposed
   ex parte application for an accelerated briefing schedule (dkt. 273),
28 the government respectfully seeks early resolution of the instant
   motion.

1    This motion is based upon the attached memorandum of points and

2    authorities, the exhibits thereto, the files and records in this

3    case, and such further evidence and argument as the Court may permit.

4    Dated: December 3, 2021          Respectfully submitted,

5                                     TRACY L. WILKISON
                                      United States Attorney
6
                                      CHRISTOPHER D. GRIGG
7                                     Assistant United States Attorney
                                      Chief, National Security Division
8

9                                     _____/s/_____

10                                    MARK TAKLA
                                      ANNAMARTINE SALICK
11                                    WILSON PARK
                                      Assistant United States Attorneys
12
                                      Attorneys for Plaintiff
13                                    UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   INTRODUCTION.....................................................1

II.  STATEMENT OF FACTS..............................................2

III. APPLICABLE LAW..................................................3

    A.   Admissibility of Self-Authenticating Foreign Business
        Records under § 3505......................................3

    B.   Self-Authenticating Foreign Business Records and the
        Confrontation Clause.....................................5

    C.   Pretrial Admissibility Determinations under § 3505 and
        Federal Rule of Evidence 104.............................8

IV.  ARGUMENT........................................................9

    A.   The Battery Records are Reliable, Self-Authenticating
        Business Records and Admissible under § 3505.............9

    B.   The Supreme Court, the Ninth Circuit, and Every other
        Court to Consider the Issue have Rejected Defendant's
        Confrontation Clause Argument...........................12

    C.   Eight Months and Multiple Meet-and-Confer Engagements
        is More than Sufficient Notice..........................13

V.   CONCLUSION.....................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                 PAGE

**CASES**

Crawford v. Washington,
    541 U.S. 36 (2004).................................................5

Garcia Abrego,
    141 F.3d 142 (5th Cir. 1998)..............................13, 14

McNeiece v. Lattimore,
    501 F. App'x 634, 636 (9th Cir. 2012).........................6

Melendez-Diaz v. Massachusetts,
    557 U.S. 305 (2009)...........................................6

United Sates v. Ray,
    930 F.2d 1368 (9th Cir. 1990).................................4

United States v. Al-Imam,
    382 F. Supp. 3d 51 (D.D.C. 2019)...........................4, 6

United States v. Anekwu,
    695 F.3d 967 (9th Cir. 2012).......................5, 7, 8, 11

United States v. Bahena-Cardenas,
    411 F.3d 1067 (9th Cir. 2005)..............................7, 12

United States v. Ballesteros-Selinger,
    454 F.3d 973 (9th Cir. 2006)..................................6

United States v. Ellis,
    460 F.3d 920 (7th Cir. 2006))................................7

United States v. Feliz,
    467 F.3d 227 (2d Cir. 2006)...................................6

United States v. Hagege,
    437 F.3d 943 (9th Cir. 2006)..................................8

United States v. Jawara,
    474 F.3d 565 (9th Cir. 2007).......................4, 11, 14

United States v. Kahre,
    610 F. Supp. 2d 1261 (D. Nev. April 20, 2019)..............9, 13

United States v. Khatallah,
    278 F. Supp. 3d 1 (D.D.C. 2017)..............................14

United States v. Kos
    No. 3:08-CR-93-BR, 2008 WL 5084006, (W.D.N.C. Nov. 25,
    2008)........................................................8

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Miller,
      830 F.2d 1073 (9th Cir. 1987)..........................4, 8, 10

United States v. Newell,
      239 F.3d 917 (7th Cir. 2001).................................13

United States v. Qualls,
      553 F. Supp. 2d 241 (E.D.N.Y. 2008)...........................8

United States v. Rojas-Pedroza,
      716 F.3d 1253 (9th Cir. 2013).................................7

United States v. Strickland,
      935 F.2d 822 (7th Cir.1991)...............................5, 14

United States v. Sturman,
      951 F.2d 1466 (6th Cir. 1991).................................8

United States v. Tedder,
      801 F.2d 1437 (4th Cir. 1986)................................14

United States v. Weiland,
      420 F.3d 1062 (9th Cir. 2005).................................6

United States v. Yeley-Davis,
      632 F.3d 673 (10th Cir. 2011).................................7

**STATUTES**

18 U.S.C. § 3505.......................................passim

**RULES**

Fed. R. Evid. 104............................................8

Fed. R. Evid. 803............................................5

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3

Pursuant to 18 U.S.C. § 3505 and Federal Rule of Evidence

4    104(a), the government seeks a pretrial admissibility determination

5    of certain foreign business records it seeks to introduce at trial.

6    Records from a foreign battery manufacture (the "Battery Records")

7    show that the charred remains of a 9-volt battery recovered from the

8    ceiling of the Magyar Kozmetika day spa, and believed to be the power

9    source of the improvised explosive device Stephen Beal ("defendant")

10   manufactured, belonged to a lot of approximately 13,500 batteries

11   manufactured and shipped to Orange County, California on March 10,

12   2018.

13

More than eight months before trial, the government notified

14   defendant of its intent to introduce records the Battery Records,

15   providing defendant the records and a foreign business records

16   declaration.  (See Government's Notice ("Govt's Notice") Exhibit A).[1]

17   The declaration, signed under penalty of perjury by a senior sales

18   manager with knowledge of the records he certified, meets all the

19   requirements for self-authenticating foreign records under § 3505 and

20   Ninth Circuit precedent.  Accordingly, the government respectfully

21   moves for a pretrial determination, as contemplated by the law, to

22   allow the government to introduce the highly relevant records at

23   trial.

24

25

26

27       [1] Pursuant to the Court's March 26, 2019 protective order (dkt.
no. 30) the government has applied to file the exhibits referenced in
28   this motion under seal.  Defendant does not object to the exhibits
being filed under seal.

## II.  STATEMENT OF FACTS

At trial, the government intends to introduce the Battery Records to show that the 9-volt battery found embedded above the blast site was one of 13,500 batteries produced by a foreign manufacturer for Company A, and one of 3,500 9-volt batteries Company A sold between March 22, 2018 and the day of the bombing.  Other evidence will show that defendant purchased a single, 9-volt battery from Company A in cash on May 8, 2018.

On July 1, 2021, more than eight months before trial, the government notified defendant of its intent to introduce the records and identified the previously disclosed records and accompanying foreign records declaration.  (See Salick Declaration ("Decl.") at ¶ 2).  Four months later (and four months before trial), the government followed up on its notice, requested a meet and confer session with defense counsel, and advised counsel of its intent to seek a pretrial admissibility determination from the Court.  (Id. ¶ 3)  Only then did counsel for defendant raise an objection, first to the reliability of the records and also to the timing of the notice.  (Id.)

In the hopes of alleviating counsel's concerns, the government provided defendant a Federal Bureau of Investigation ("FBI") report that detailed the July 19, 2018 service of a court order to Company A's American Headquarters.  (Exhibit B at B-001, B-016-17.)  The order called for manufacturing records related to a purchase order and product number that matched the number visible on the Company A battery found above the blast site.  The government provided counsel with previously produced e-mail correspondence between the FBI and Company A regarding the service of the court order and Company A's

2

response, and produced new communications from Company A re-confirming the foreign records certification.  (Exhibit B at B-003-B-005.)

In a further meet and confer communication, defendant raised a new objection, arguing that the foreign records, the accompanying declaration, and communications the government disclosed to obtain the foreign records are "testimonial" and their admission without a witness would violate defendant's rights under the Sixth Amendment's Confrontation Clause.  (Salick Decl. at ¶ 4)  The government responded that it did not intend to introduce the communications at trial and that it was aware of no legal authority support defendant's Confrontation Clause objection.  The government asked counsel to identify the precedent upon which it relied.  No response was provided.  (Id.)

## III. APPLICABLE LAW

### A.  Admissibility of Self-Authenticating Foreign Business Records under § 3505

Pursuant to § 3505, a foreign record of a regularly conducted activity is admissible in a criminal proceeding and "shall not be excluded as evidence by the hearsay rule if a foreign certification attests that":

(A) Such record was made at or near the time of the occurrence of the matters set forth, by . . . a person with knowledge of those matters;

(B) Such record was kept in the course of a regularly conducted business activity

(C) The business activity made such a record as a regular practice; and

(D) If such record is not the original, such record is a duplicate of the original;

3

> Unless the source of information or the method of circumstances of perpetration indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1)(A)-(D).

Section 3505 further defines a "foreign certification" as "a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country."  18 U.S.C. § 3505(c)(2).  With a valid foreign certification that attests to the relevant requirements, a foreign record is admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  18 U.S.C. § 3505(a)(1).  A custodian of records or other "qualified person" is a "person familiar with [the] matters" she certifies.  United Sates v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system."); United States v. Miller, 830 F.2d 1073, 1077 (9th Cir. 1987); see also United States v. Al-Imam, 382 F. Supp. 3d 51, 57 (D.D.C. 2019) (a qualified witness under § 3505 "need not have personal knowledge of the actual creation of the document," but "need only be familiar with the record-keeping procedures of the organization.") (internal citations omitted).

As with domestic business records, a properly executed certification serves to "authenticate the foreign records, and thus dispenses with the necessity of calling a live witness to establish authenticity."  United States v. Jawara, 474 F.3d 565, 584 (9th Cir. 2007) (internal citations omitted).  Section 3505 "streamline[s] the admission" of foreign records without altering the "benchmark

4

question" of admitting any documentary evidence: do the records "bear the indicia of reliability?"  Id.  Thus, "Congress enacted § 3505 not to add technical roadblocks to the admission of foreign records, but, rather, to streamline the admission of such records."  Id. (citing United States v. Strickland, 935 F.2d 822, 831 (7th Cir.1991)).

Section 3505 tracks Federal Rule of Evidence 803(6)'s requirements for self-authenticating business records as an exception to the rule against hearsay.  Fed. R. Evid. 803(6) advisory committee's note ("the foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses. . . . Protections are provided by the authentication requirements of . . . 18 U.S.C. § 3505 for foreign records in criminal cases.").

The Ninth Circuit confirmed that § 3505's requirements are "substantially similar" to the requirements of Federal Rules of Evidence 803(6) and 902(11), and that § 3505(a)(1) certificates are analogous to certificates of authentication for domestic records presented under the same rules.  United States v. Anekwu, 695 F.3d 967, 976 (9th Cir. 2012).

Accordingly, provided the government notified defendant of its intent to introduce foreign records and the records are accompanying by a certification that complies with § 3505's requirements, the foreign records are self-authenticating.

**B.   Self-Authenticating Foreign Business Records and the Confrontation Clause**

The Confrontation Clause bars the admission of "testimonial statements of a witness who does not appear at trial unless he is unavailable to testify, and the defendant had a prior opportunity for

5

cross-examination." Crawford v. Washington, 541 U.S. 36, 51-52, (2004) (citing U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.")). The "core class" of testimonial statements include "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorial . . . ." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009)

By contrast, the Confrontation Clause does not apply to nontestimonial statements, which may be introduced at trial without a witness to cross-examine. Nontestimonial statements include, generally, business and public records because that were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . they are not testimonial." Melendez-Diaz, 557 U.S. at 324.; see also United States v. Al-Imam, 382 F. Supp. 3d 51, 59 (D.D.C. 2019) (noting that every court to have considered whether business records are nontestimonial has concluded that the records and certifications do not violate the Confrontation Clause); McNeiece v. Lattimore, 501 F. App'x 634, 636 (9th Cir. 2012) (affirming state appellate court's decision that autopsy report was a non-testimonial business record over Confrontation Clause objection); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005) (routine domestic public records and accompanying certifications are not testimonial and their admission without witness testimony does not violate the Confrontation Clause); United States v. Ballesteros-Selinger, 454 F.3d 973, 975 (9th Cir. 2006) (standardized form recording deposition hearing contained in

1  defendant's immigration file was nontestimonial); _United States v._

2  _Feliz_, 467 F.3d 227, 231 (2d Cir. 2006) (Rule 803(6) business records

3  are not testimonial; to hold otherwise would be "fundamentally

4  inconsistent with what the Supreme Court has suggested comprise the

5  defining characteristics of testimonial evidence."); _United States v._

6  _Yeley-Davis_, 632 F.3d 673, 678 (10th Cir. 2011) _cert. denied_, 563

7  U.S. 969 (2011) (domestic business records and the accompanying

8  902(11) certification are non-testimonial, self-authenticating

9  records that may be admitted without a witness); _United States v._

10  _Ellis,_ 460 F.3d 920, 927 (7th Cir. 2006)) (Verizon phone records were

11  "created for the administration of [Verizon's] affairs and not for

12  the purpose of establishing or proving some fact at trial" and "not

13  testimonial and thus, not subject to confrontation." (quoting

14  _Melendez-Diaz_, 557 U.S. at 324 (2009)).

15      To distinguish testimonial from nontestimonial statements, the

16  Ninth Circuit instructs courts to assess, from a "reasonable"

17  standard, whether the "the primary purpose" of the statement "is for

18  the use in litigation."  _United States v. Rojas-Pedroza_, 716 F.3d

19  1253, 1267 (9th Cir. 2013); _United States v. Bahena-Cardenas_, 411

20  F.3d 1067, 1075 (9th Cir. 2005) (Non-testimonial statements are those

21  that were "not made in anticipation of litigation and . . . [are]

22  simply a routine, objective, cataloging of an unambiguous factual

23  matter.").

24      Applying this framework to foreign records, the Ninth Circuit

25  confirmed that foreign business records and properly executed § 3505

26  declarations are nontestimonial and that their admission without a

27  testifying witness does not violate the Confrontation Clause.

28  _Anekwu_, 695 F.3d at 976-77.  Most recently, the Ninth Circuit

7

1  affirmed the district court's admission of foreign mailbox and bank

2  records via a § 3505 certification over defendant's Confrontation

3  Clause objections, holding:

> The primary question raised on appeal is whether the
> district court committed plain error by admitting
> certificates of authentication for foreign public and
> business records by means of affidavit in violation of the
> Confrontation Clause. We conclude that it did not.

7  Anekwu, 695 F.3d at 976-77; see also United States v. Hagege, 437

8  F.3d 943, 958 (9th Cir. 2006) (district court's admission of foreign

9  records via § 3505 certification did not violate the Confrontation

10 Clause); United States v. Miller, 830 F.2d 1073, 1078 (9th Cir. 1987)

11 (admission of foreign bank records kept in the course of business did

12 not violate the Confrontation Clause).

13        Other courts to have considered whether the admission of § 3505

14 foreign records and their certifications violate the Confrontation

15 Clause have reached the same conclusion; they do not.  See  United

16 States v. Sturman, 951 F.2d 1466, 1490 (6th Cir. 1991) (admission of

17 foreign business records certified under § 3505 did not violate the

18 Confrontation Clause); United States v. Qualls, 553 F. Supp. 2d 241,

19 245-46 (E.D.N.Y. 2008) ("This court holds that the authentication of

20 foreign business records pursuant to § 3505 does not violate the

21 Confrontation Clause."); United States v. Kos, No. 3:08-CR-93-BR,

22 2008 WL 5084006, at *3 (W.D.N.C. Nov. 25, 2008) ("Certifications of

23 foreign business records are not the sort of testimonial evidence the

24 Confrontation Clause bars.").

25        **C.    Pretrial Admissibility Determinations under § 3505 and**
              **Federal Rule of Evidence 104**

27        Federal Rule of Evidence 104 and § 3505 provide for the pretrial

28 admissibility determination of evidence.  Federal Rule of Evidence

104 allows a party to move for the resolution of preliminary questions, including whether "evidence is admissible." Fed. R. Evid. 104(a). Similarly, under § 3505, after the party intending to offer the foreign record in evidence provides "written notice" at the arraignment or "as soon as after the arraignment as practicable," the other party may object to the records admission, and the Court shall determine the admissibility "before trial." 18 U.S.C. § 3505(b). Failure to make such an objection "before trial" constitutes a waiver of that objection. Id.

Pretrial determinations of important evidence especially in cases of foreign records, is prudent, where litigation involving international corporations and witnesses could delay proceedings. As district courts in this Circuit have found, a pretrial hearing under Rule 104(a) is an appropriate procedure "determine the sufficiency of the certifications and to hear any objections." United States v. Kahre, 610 F. Supp. 2d 1261, 1266 (D. Nev., April 20, 2019).

## IV. ARGUMENT

### A. The Battery Records are Reliable, Self-Authenticating Business Records and Admissible under § 3505

The Battery Records, accompanied by the sworn certification, are self-authenticating business records and should be deemed admissible for trial.

First, the declaration certifying records meet each of § 3505(a)(1)'s requirements. A Senior Sales Manager at the battery manufacture, certified under criminality penalty under the laws of the foreign country: (1) the records were "made, at or near the time of the occurrence" by a person with "knowledge" of the matters; (2) the records were kept in the "course of regularly conducted business

1    activity; (3) the business activity made records as "regular
2    practice"; and (4) if a duplicate, the duplicate is of the original.
3    (Exhibit A-010-11.)

4         Second, following defense counsel's noted concerns on November
5    2, 2021, the FBI re-confirmed that the February 15, 2019
6    certification covered the specific records returned in response to a
7    court order and that the Senior Sales Manager was custodian of
8    records or other "person of knowledge" to satisfy § 3505.  (Exhibit
9    B-004-005.)

10        Third, the business records, certifications, and transmittal
11   communications all bear the "indicia" of reliably.  Printed on the
12   company's letterhead, the eight-pages of manufacturing records
13   include the date a "can" or batch of batteries was produced, the lot
14   number the batteries were divided into, and the product order number
15   and client order number used to prepare the lots for shipment.  (Id.
16   at B-006-013, B-021-022.)  The senior employee at the company,
17   attested to the information contained in the certification, and
18   signed, under the threat of criminal penalty in his own country, the
19   certifications in both the English and the native language.  (Id. at
20   B-014-015.)  Communications among the FBI, Company A, and its
21   subsidiary document the FBI's service of a court order to Company A
22   headquarters in the United States and the specific records the order
23   sought.  (Id. at B-001-005.)  Additional communications show that
24   Company A, through its contractor, returned the requested records.
25   Recent email communications reconfirmed the certification's scope and
26   propriety.  (Id. at B-003-005.)

27        The Ninth Circuit addressed the "reliability" of foreign records
28   in Miller.  830 F.2d at 1077.  The Ninth Circuit upheld the admission

of foreign bank records as "self-authenticating" business records
that were accompanied by a proper certification under criminal law
and bore the proper "indicia of reliability."  Id.  Because banks
"depend on keeping accurate records," the Court reasoned, bank
records are among the "most common types of business record routinely
used in our courts" and "no motive is suggested" that would lead a
bank "to manipulate the records at to change, distort, or manipulate
the records at issue here."  Id.  Moreover, the Court held that
examination of the recordkeeper would be fruitless; "examination of
the recordkeepers . . . could not reasonably be expected to establish
anything more or less" than what the records and certification
demonstrated.  Id. at 1078; see also Jawara, 474 F.3d 565, 584-85
(affirming admission of West African examination records that
contained "sufficient indicia of reliability," specifically citing
the records' letterhead and stamp imprint); Anekwu, 695 F.3d at 972
(affirming district court's denial of defendant's motion in limine to
exclude foreign mailbox ownership records finding that the records
had the "requisite trustworthiness," citing the records' inclusion of
a driver's license with a picture of the defendant.)

    The same is true here.  Manufacturing records from a reputable
subsidiary of a national American retailor and pharmaceutical chain
are the same type of business records routinely admitted in federal
court.  The transmittal correspondence shows that Company A directed
its subsidiary to cause the search of its records per the terms of
the court order, and that the subsidiary returned the responsive
records.  No "motive" to "change, distort, or manipulative" the
records is present.  Moreover, further examination of the
recordkeeper, by interview or deposition, would be fruitless.  Such

1  testimony would merely duplicate the information defendant possess

2  and consume unnecessary time and resources.

3        **B.    The Supreme Court, the Ninth Circuit, and Every other Court**

                **to Consider the Issue have Rejected Defendant's**

4                **Confrontation Clause Argument**

5      Admission of the foreign records through the properly executed

6  certification does not violate the Confrontation Clause.  The Battery

7  Records and the certification are nontestimonial.[2]  They were

8  "created for the administration of an entity's affairs and not for

9  the purpose of establishing or proving some fact at trial."

10 <u>Melendez-Diaz</u>, 557 U.S. at 324.  The battery manufacture created the

11 batteries to track the production and shipment of batteries.

12 According to the sworn certification, the records were made "at or

13 near the time of the occurrence of the matters" and "were kept in

14 course of regularly conducted business activity."  (<u>See</u> Exhibit A at

15 10).  The records were "not made in anticipation of litigation and

16 . . . [are] simply a routine, objective, cataloging of an unambiguous

17 factual matter.") <u>Bahena-Cardenas</u>, 411 F.3d at 1075.  As noted, like

18 the Supreme Court and the Ninth Circuit, every other court to

19 consider the issue has rejected defendant's Confrontation Clause

20 objection.

21      Accordingly, admission of the Battery Records and the properly

22 executed § 3505 certification is entirely consistent with the Sixth

23 Amendment.

24

25

26

27

---

28      [2] As the government advised defense counsel, it does not intend to introduce the communication records it produced.  Thus, whether those documents are testimonial in nature is not before the Court.

1

2

> ### C.  Eight Months and Multiple Meet-and-Confer Engagements is More than Sufficient Notice

3

4      The government complied with § 3505(b)'s notice requirements and

5   defendant cannot point to any prejudice.  Section 3505(b) requires

6   the government to provide notice of its intent to introduce foreign

7   records at the arraignment or "as soon as after the arraignment as

8   practicable."  18 U.S.C. § 3505(b).  The notice requirement serves to

9   give the opposing party an opportunity to contest the records in

10  advance of trial.  Kahre, 610 F. Supp. 2d at 1262; see also Garcia

11  Abrego, 141 F.3d 142, 176-78 (5th Cir. 1998) (3505's notice

12  requirement is meant to "to facilitate pretrial determinations of the

13  admissibility of foreign records . . . than establish prerequisites

14  to admissibility under the statute").

15      Here, the government notified defendant as after it had received

16  and processed the Battery Records.  Eight months before trial is

17  ample time for the defendant to review the eight pages of

18  manufacturing records and raise his objections.  Indeed, there has

19  been sufficient time for the parties to meet and confer, for the

20  government to obtain additional records aimed at addressing counsel's

21  concerns, and for defendant to object to the government's instant

22  motion.  Accordingly, defendant can cite no prejudice he has suffered

23  to warrant the extreme remedy of excluding highly probative evidence

24  of a central trial issue, namely that defendant is the murderer.

25      Courts have consistently rejected defendants' untimely notice

26  objections to the admission of foreign records where a defendant

27  suffers no prejudice.  For example, in Garcia Albrego, the Fifth

28  Circuit upheld the admission of foreign bank records the government

    noticed twenty-six days before the suppression hearing at which the

district determined admissibility, forty-eight days prior to
admission of the records at trial, and six months after arraignment
concluding: "The plain language of § 3505 does not make compliance
with the notice requirement a prerequisite to the admissibility of
evidence under the statute." Garcia Abrego, 141 F.3d at 176–78; see
also United States v. Newell, 239 F.3d 917, 921 (7th Cir. 2001)
(upholding admission of foreign records the government did not notice
at arraignment, because the proper "remedy" for the notice violation
was for defendant to "object at trial" on prejudice grounds and
concluding the late notice "did not harm [defendant's] defense in the
slightest."); United States v. Tedder, 801 F.2d 1437, 1449 (4th Cir.
1986) (affirming introduction of foreign records noticed only one
week before trial where defendant suffered no prejudice because he
had time to file a pretrial motion); United States v. Khatallah, 278
F. Supp. 3d 1, 8 (D.D.C. 2017) (upholding admission of foreign
records even though the government provided the notice three years
after the defendant's arraignment).

Moreover, exclusion would contravene the § 3505(b)'s purpose of
"streamline[ing]" the admission of foreign records. Jawara, 474 F.3d
at 584; Garcia Abrego, 141 F.3d at 178 ("were we to conclude that a
failure to give timely notice of an intent to offer foreign records
under § 3505 bars admission of the records pursuant to the statute,
we would flout § 3505's purpose by turning a requirement intended to
facilitate the admission of foreign business records into a
procedural barrier impeding their admission."); Strickland, 935 F.2d
at 831 ("Section 3505 was enacted by Congress in order to create "a
simple, inexpensive substitute for the cumbersome and expensive

14

procedures presently required for the admission of foreign business records.").

The same reasoning applies here.  Eight months' notice more than satisfies § 3505's intent and the circumstances of this case offer no reason to erect a procedural barrier that would prevent the trier of fact from considering highly probative evidence.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court find that the Battery Records and the properly executed § 3505 certification are self-authenticating and admissible pursuant to Rule 104 and § 3505.