UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>STEPHEN BEAL,<br><br>          Defendant. | Case No. 8:19-CR-00047-JLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY (Docs. 251, 263)**<br><br>**FILED PROVISIONALLY UNDER SEAL** |

      This matter is before the Court on Defendant's motions to exclude the Government's experts based on the Government's failure to provide sufficient notice. Specifically, two fully briefed motions are before the Court, and both were heard on December 10, 2021. The first is Defendant's Motion to Exclude Testimony of Government's Explosives Expert for Lack of Notice. (*See* Docs. 263 (Mot.), 269 (Opp.), & 286 (Consolidated Reply).) The second is Defendant's Motion to Exclude Testimony of Other Experts. (*See* Docs. 251 (Mot.), 267 (Opp.), & 286 (Consolidated Reply).)

      As set forth herein, the Court GRANTS the Defendant's Motions in limited part

and orders the further disclosures set forth herein.  To the extent the Motions are not expressly granted, they are DENIED.  Additional disclosures are ordered in the concluding section of this Order.

The rulings set forth herein, however worded, are not meant as rulings on challenges to the expert reports and testimony on any basis other than whether the Government has met its disclosure obligations.

## I.   LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(G) sets forth the Government's pretrial expert disclosure obligation.  In relevant part, it provides:

> **(G) Expert Witnesses.** At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).  A district court may order expert disclosures from the government that are "complete, comprehensive, accurate, and tailored to the issues on which the expert is expected to testify," and can also exercise its discretion to direct the government to "identify the documents or information that the expert reviewed in preparing his or her report . . . ." *United States v. W.R. Grace*, 526 F.3d 499, 503, 516 (9th Cir. 2008) (en banc) (quotation marks omitted).

The relevant portion of Rule 16(a)(1)(G) was added in 1993 as subdivision (a)(1)(E).  *See* Fed. R. Crim. P. 16 advisory committee's note to 1993 Amendment ("1993 note").)  Its purpose was to require additional disclosure in order to "minimize surprise . . . , reduce the need for continuances, and to provide [the defendant] with a fair opportunity [to] cross-examin[e] the expert."  *Id.*

## II.   BACKGROUND

Defendant Stephen Beal is charged with, *inter alia*, use of a weapon of mass

destruction resulting in death, in violation of 18 U.S.C. § 2332(a)(2). (*See* Doc. 14, Indictment.) Defendant stands accused of making and planting an improvised explosive device ("IED") that exploded on May 15, 2018 at a day spa located at 11 Mareblu in Aliso Viejo, California ("the blast scene"), killing his former girlfriend, Ildiko Krajnyak ("the victim") and injuring two others. The parties anticipate the trial will include introduction of expert testimony.

The Government made its Rule 16(a)(1)(G) disclosures in a series of letters to defense counsel, which are part of the record, and which are cited herein by their dates. At the time of these letters, or before, the Government disclosed the curricula vitae of its experts, together with their reports. These documents are also part of the record before the Court.

### III. RULINGS APPLICABLE TO ALL EXPERTS

This section sets forth rulings that are broadly applicable to the motions.

As discussed by the Court at the hearing, the Court rejects Defendant's argument that the Government cannot meet its disclosure obligations by incorporating by reference its expert reports. This argument relies on the unpublished district court case of *United States v. Valdez*, No. 18-CR-00608-JD-1, 2019 WL 539074, at *1 (N.D. Cal. Feb. 11, 2019). There, the court rejected the Government's argument that its additional production of 1,200 pages of discovery fulfilled its Rule 16(a)(1)(G) obligation. *Id.* at *2. Here, the Government's reference is not to a large volume of discovery on a single issue; instead, the reference is to specifically identified expert reports and investigative reports. Broadly speaking, the Court agrees that non-specific references to other discovery cannot make up for a wholesale failure to summarize an expert's opinion. But here, the Government has in places incorporated by reference the underlying expert reports. This is generally permissible, although any conclusions by an expert within his or her report must either set forth a basis for the conclusion or, in certain instances, the basis must be premised upon the expert's education, experience, and/or training. To the extent the Government relies on the incorporation

of the expert reports, the expert evidence is limited by the scope of that report, together with the basic scientific concepts underlying those reports. For example, as to basic scientific concepts, Diana Wright may testify as to "the basic science of polymers" which underlie her conclusions. (*See* Doc. 251, Mot. at 12-13; Doc. 267, Opp. at 15-16.)

Related to this point, Defendant complains that the Government has identified mere "topics" for testimony. Some disclosures address mere background information or topics rather than opinions or conclusions; in such instances, there is no particular basis or reason underlying them. However, to the extent that an area of testimony is merely background information, no disclosure of the bases or reasons is required because Rule 16(a)(1)(G) does not apply to background information. *See* Fed. R. Crim. P. 16, 1993 note (explaining that the "summary of the expected testimony" may "inform the requesting party [that] the expert will be providing only background information on a particular issue").

Similarly, in many instances, experts can and do testify from knowledge and expertise gained as a result of working in specialized field. This is most pronounced in the field of law enforcement, where a gang expert might testify solely on the basis of his or her experience rather than on an underlying body of objective knowledge. Experts who testify as to scientific matters tend to apply objective knowledge or scientific concepts.

On this point, at the hearing, the defense gave the example of the DNA expert opinions. According to the Government's disclosure, Jaclyn Garfinkle is expected to testify that, *inter alia*, high heat and fire can contribute to the inability to extract high quality DNA and "why some items collected during the investigation were not suitable for DNA testing." (Gov't Oct. 1, 2021 Ltr. at 7.) The basis for Garfinkle's opinion that the tendency of DNA material to degrade due to high heat is sufficiently disclosed because this general tendency is of the type one would expect the expert to have based on her education, experience, and training. But if this expert, or any other,

is also expected to testify that he or she relied on other materials, such as technical or scholarly articles or scientific experiments as a basis of or reason for his or her conclusion or opinion, in order to facilitate effective cross examination of the Government's expert and possible rebuttal by a defense expert, Rule 16(a)(1)(G) requires the Government to disclose such materials as "the bases and reasons for those opinions." Fed. R. Crim. P. 16(a)(1)(G). The Government must promptly disclose any such additional bases or reasons.

And more generally, experts may be expected to rely on their education, experience, and training when providing an explanation for the absence of evidence or to provide an explanation as to why certain potential sources of evidence were not investigated by the Government's experts. This renders sufficient the Government's disclosure as to Garfinkle's anticipated testimony about DNA degradation due to high heat and fire. The same is true as to Morefield's anticipated testimony about what evidence is generally expected to survive an IED blast versus what evidence is generally not expected to survive an IED. (*See* Doc. 263, Mot. at 21-22.) Another example is Jessica Walker's testimony about the lack of hair and fiber evidence. (Doc. 251, Mot. at 14-16.)

The Court rejects Defendant's arguments based on the Government's failure to identify precise portions of the manuals it has produced that specify the methods its experts have employed. The Court presumes—and Defendant does not maintain otherwise—that the manuals are indexed and/or have tables of contents, and the expert reports specify the methods used. This is sufficient to satisfy Rule 16(a)(1)(G).

The Court also rejects the defense argument that subsequent, more detailed disclosures, made in response to Defendant's request for further information, should be excluded based on the delay. The Government's disclosures were sufficiently timely and were made in good faith.

The Court also rejects the argument that the Government fails to meet its Rule 16(a)(1)(G) obligation because its disclosure is overly broad, including information

that it may offer in rebuttal, but not in its case-in-chief. (*See* Doc. 251, Mot. at 8.) Defendant himself sought such disclosure. (*See* Doc. 267, Opp. at 10-11 & Ex. O, Def. Mar. 1, 2021 Ltr.)

Further, the Court notes that the Government's Exhibit X presents more than three gigabytes of data, in multiple files, organized by expert. The Government provides no pinpoint citation to any document within Exhibit X as to any particular point the Government wishes to make. (*See, e.g.*, Doc. 269, Opp. at 9 (referring to Exhibit X and stating "Defendant also has Morefield's examination notes and all pictures that Morefield took in relation to his examination.").) Beyond this organization by expert, the relevance of the materials to the precise matters before the Court is not explained. Accordingly, the Court has not reviewed Exhibit X for the purpose of determining these Motions.

## IV. EXPLOSIVES EXPERTS MOTION (DOC. 263)

### A. Eric Morefield

The defense objects to the disclosures related to the opinions of Eric Morefield, who has been disclosed as an expert in the field of Explosive Devices. (*See* Doc. 263, Mot. at 11-24; Doc. 269, Opp. at 9-18; Gov't Oct. 1, 2021 Ltr. at 1-4; Gov't Oct. 29, 2021 Ltr. at 2-3 & app'x.[1])

An initial review of the relevant report is helpful to the Court's analysis. Morefield's January 17, 2019 report is 57 pages long. The first 13 pages contain an introduction consisting mostly of a very long list identifying items by number and short description, but also including a description of four separate sections of the report and a page of conclusions. The four sections relate to (1) evidence from the blast scene; (2) evidence seized from Defendant's residence; (3) evidence regarding exemplar boxes and batteries and (4) comparisons of items from among these three categories of evidence. A final page describes the methods used by the expert.

---

[1] In pursuit of his Master's Degree, Morefield in 2021 authored the article, attached to the Government's October 29, 2021 Letter, entitled "The Blast Overpressure Required to Break Various Wires in Improvised Explosive Device Fuzing Systems."

Defendant makes a number of objections to the sufficiency of the Government's disclosures.

### 1.     Sufficiency of Disclosure Regarding the Expert's Methods

The Government noted that Morefield's methods were specified in his report, but Defendant complains that there is no attempt to tie the bulleted list of methods to each of the conclusions of Morefield's report. (Mot. at 11-12.) Because of this, Defendant argues, the Government's disclosure fails to set forth the bases and reasons for Morefield's conclusions.

The majority of Morefield's report merely identifies items. He examined items from the blast scene, items seized from Defendant's residence, and certain exemplar items. The methods for his identifications are specified as visual and/or microscopic examination. (Morefield Rpt. at 56.) Examination of the items, together with the expert's education, experience, and training, form the bases for the comparisons he made (results in Table 1 at 55) and the overall conclusions of Morefield's report (found at page 13). This is a sufficient disclosure under Rule 16(a)(1)(G) as to methods.

### 2.     Fragments of Plastic and Glass Were Near Explosives

Morefield is expected to testify that plastic and glass exhibited damage consistent with being near the explosives at the time the IED was detonated. Defendant contends the Government has failed to specify the bases and reasons for this conclusion. (Mot. at 14-15.) The Court finds sufficient the Government's disclosure that this conclusion is based on the expert's assessment of the condition of the plastic and the glass, that is, highly fragmented and melted and, as to some items, the location of the plastic and glass (adhered to the victim's sweater or embedded in her flesh). (*See* Opp. at 11-12.) The disclosure of the underlying reasons as based on Morefield's extensive experience in examining evidence remaining after the detonation of an IED is sufficient.

### 3. Battery Cells and Wiring Were Near Explosives

Defendant also contends that the Government insufficiently describes the bases and reasons for Morefield's conclusion that the battery cells and wire fragments were in intimate contact with the explosives. (Mot. at 15-16.) The disclosure by the Government refers to pages 14 through 19 of the Morefield report, which discusses the condition of the evidence. (Gov't Oct. 29, 2021 Ltr. at 2; Morefield Rpt. at 14-19.) The Government also notes that Morefield may testify as to specific characteristics of the battery cells and wires ("deformed, twisted, charred, . . . bent, . . . deformed [and] melted"). This disclosure is sufficient to meet the Government's obligation.

### 4. Certain Wires Used for Pyrotechnics

Defendant objects to the disclosure relating to Morefield's anticipated testimony that certain wires are used only in pyrotechnics. The Government represented that Morefield's conclusion is based on his "research into the uses of yellow, single strand, multiconductor wire, looking at (1) wire manufacturers' websites and catalogs; (2) hobby electronics stores, home improvement stores, and audio/video stores' websites; and (3) reviewing home appliance manuals. The expert did not retain copies of the items reviewed." (Doc. 285-8, Gov't Nov. 12, 2021 Ltr. at 2 (responding to Def. Oct. 13, 2021 Ltr.).) The Government's disclosure is sufficient under Rule 16(a)(1)(G).

### 5. Battery Connectors, Soldering Irons, Black Powder and Electric Matches Can Be Used to Make IEDs

The Government disclosed that it expects Morefield to testify that "many items" seized from Defendant's residence, including, by way of example, items specified in the heading of this subsection, "could be used make an IED." (Oct. 1, 2021 Ltr. at 3; Mot. at 17-18.) The Government does not expressly identify the basis for this opinion. (*See* Oct. 29, 2021 Ltr. at 3 (stating that the existing disclosure is sufficient).) However, the Court would find that a disclosed basis of the expert's

8

education, experience, and training to be sufficient. If the expert's opinion has another basis, it must be disclosed. Conversely, the conclusion that there are other such non-specified items is insufficiently disclosed; therefore, the existence of other, non-specified items may not be offered as evidence unless promptly disclosed.

### 6.   Three Particular Combinations of Chemicals

Defendant contends the Government's disclosure is insufficient as to the conclusion that there are a number of combinations of chemicals seized from Defendant's residence that could be used to make an IED similar to that which was detonated at 11 Mareblu. (Mot. at 18-20.) The bases for the three specific combinations identified in the Government's November 22, 2021 letter (at 1-2) have been sufficiently disclosed. Morefield's experience, education, and training, is a basis for his testimony as to these specific combinations of chemicals having the mass and characteristics necessary to fuel an IED that would fit in the exemplar 12"x6"x6" box. The conclusion that there are other such non-specified combinations—and the bases therefor—are insufficiently disclosed; therefore, the existence of other, non-specified combinations may not be offered as evidence unless promptly disclosed.

### 7.   Skills and Time Needed to Build an IED

The Government disclosed that Morefield will testify as to the knowledge needed to build an IED and that the IED detonated at 11 Mareblu could have been built in a matter of hours and set up in a matter of minutes. (Mot. at 20, 24.) This is more than simply a topic identified by the Government. This is a description of an opinion that a lay person could build an IED, and how long it would take that lay person to build the IED and to set it up, if that lay person had the knowledge and skills described by Morefield. The Government has disclosed that these opinions are based on Morefield's education, experience, and training. This disclosure is sufficient under Rule 16(a)(1)(G).

### 8.   Possible Switches for IED

For the same reasons noted above, the Government has disclosed a sufficient

9

basis for Morefield's testimony regarding how a simple switch could be fashioned to detonate an IED. (*See* Mot. at 22-23; Gov't Oct. 1, 2021 Ltr. at 3.)

### 9. Effects of Explosion on Wires

For the same reasons noted above, the Government has disclosed a sufficient basis for Morefield's testimony regarding how wires are affected by the explosive forces of an IED. (*See* Mot. at 23-24; Gov't Oct. 29, 2021 Ltr. at 3 & app'x (Morefield article).)

### 10. Differences between Single Core and Multi-Strand Conductors

Defendant complains this is a mere topic rather than a disclosed opinion or conclusion with an underlying basis or reason. (Mot. at 23.) To the extent it is, it is not subject to Rule 16(a)(1)(G), as discussed in section III. Looking to the Government's follow-up disclosure, the expert testimony would be better described as a conclusion that single core and multi-strand conductors may be used for different purposes, and the basis for that testimony is Morefield's experience in building IEDs using each of the types of conductors. (Doc. 285-8, Nov. 12, 2021 Ltr. at 2 (disclosing how Morefield has used both types of conductors in building IEDs and the different characteristics of each).) This disclosure is sufficient.

### 11. Evidence Recovered and Items Not Tested

The Government disclosed that Morefield may testify as to the type of evidence recoverable after an IED explosion, and more specifically that the chemicals used to detonate the IED may be consumed in the blast and that the components of the IED may be drastically deformed after the blast. (Oct. 1, 2021 Ltr. at 3; Oct. 29, 2021 Ltr. at 3.) The basis for such testimony is Morefield's education, experience, and training. (*Id*.) This disclosure is sufficient. This appears to be an example of an expert testifying regarding the lack of evidence, which the Court discussed in section III.

Defendant contends these are mere topics, not opinions or conclusions. The Court disagrees, but to the extent they are, then Rule 16(a)(1)(G) does not require disclosure for the reasons stated in section III.

### 12. Items Not Tested

The Government also disclosed that Morefield may testify as to why certain items were not tested, including that some items were not tested because they were heavily contaminated with blood and bodily fluids and that other items were not tested because the chance of finding helpful evidence would be low. (Oct. 1, 2021 Ltr. at 3; Oct. 29, 2021 Ltr. at 3.) The basis and reasons for not testing the contaminated items is sufficiently stated. However, as to the other items, the Government's disclosure is insufficient because it does not identify what other items were excluded from the FBI's analysis. Moreover, the stated basis and reason—that the chance of finding helpful evidence is low—is meaningless because the identity of the other items not tested are not specified. The Government must promptly disclose which other items its expert did not test, the reasons those items were not tested and, if the reason is that the chance of finding helpful evidence was low, why the expert believed that to be so.

### B. Kevin Finnerty

The defense objects to the disclosures related to the opinions of Kevin Finnerty who, like Morefield, has also been disclosed as an expert in the field of Explosive Devices. (*See* Mot. at 24-29; Opp. at 18-20; Gov't Oct. 1, 2021 Ltr. at 4; Gov't Oct. 29, 2021 Ltr. at 3-4.)

Still pending at the time of the hearing on this Motion was a supplemental report by Finnerty regarding a video recorded, controlled re-creation of the IED blast, observed by all counsel. The Government has since disclosed that report and the Court has ordered it filed under seal. This Order does not address whether the supplemental report meets the requirements of Rule 16(a)(1)(G).

Finnerty's 17-page May 18, 2021 report is described as a supplement to Morefield's report. (Finnerty Rpt. at 4.) As detailed in the first two sections of Finnerty's three-section report, Finnerty first examined fragments of yellow wires recovered from the blast scene and then prepared a table to set forth the results of his comparison of items from the blast scene to items seized from Defendant's residence.

(*See id.*) The third section of his report describes items Finnerty deemed irrelevant to his conclusions. (*See id.*) As did the Morefield report, the Finnerty report ends with a description of his methods and the limitations of his report. (*Id.* at 17-18.)

### 1. Sufficiency of Disclosure Regarding the Expert's Methods

Defendant's arguments regarding the sufficiency of disclosure of Finnerty's methods track those made as to Morefield (Mot. at 24-26), and the Court rulings do as well. Specifically, the majority of Finnerty's report merely identifies items. He examined items from the blast scene and items seized from Defendant's residence. The method for this is specified as visual or microscopic examination. (Finnerty Rpt. at 17.) Examination of these items, together with the expert's education, experience, and training, form the bases for the comparisons he made (results in a table in Section 2 at 16) and the overall conclusions of Finnerty's report (found at page 5). This is a sufficient disclosure under Rule 16(a)(1)(G) as to methods.

### 2. Comparison of Wires

Defendant objects to the Finnerty disclosure, asking essentially if Finnerty will be limited to the scope of his report and, if so, to which portions will he testify. (*See* Mot. at 27-28.) As noted *supra* section III, where the Government's disclosure incorporates by reference the underlying scientific expert reports, it is limited to the scope of the matters discussed in those scientific expert reports, together with any basic scientific concepts underlying those reports. As for a narrowing of that disclosure in the manner sought by Defendant, Rule 16(a)(1)(G) does not require this. (*See* Mot. at 28 (asking that the Government "reference the appropriate sections of the lab report").)

### 3. Skills Needed to Build an IED

The Court's ruling regarding the Finnerty disclosure on the topic of skills needed to build an IED is the same as that for the Morefield disclosure: the Government's disclosure is sufficient.

### C. Arson Investigators

The Government disclosed the CVs of the arson investigators,[2] as well as their reports. (*See* Mot. at 30-32; Opp. at 21-23.) The reports reveal a mix of expert- and percipient-witness evidence. The Government has disclosed that the arson investigators will testify regarding conclusions falling into two broad categories: First, that there was a distinctive metallic smell at the blast scene and that there was not a smell of natural gas, nor was there the sound of natural gas; and second, that the cause of the blast was an IED and that the blast was not caused by natural gas leak. (Gov't Sept. 30, 2021 Ltr. at 2.)

Testimony regarding the smells and sounds at the blast scene (or their absence) is percipient testimony that is informed by the expert's education, experience, and or training. The Government's disclosure on these issues is sufficient in light of its identification of the subject matter, the experts' CVs detailing their education, experience, and training, and the investigators' reports that establish their presence at the blast scene shortly after the explosion.

Testimony regarding the cause of the blast is likewise sufficiently disclosed. Numerous bases for this conclusion are disclosed, including the ruling out of the presence of natural gas or oxygen as fuel for a vapor explosion. (*See, e.g.,* Supp. Rpt. 1 at 3-4; Supp. Rpt. 2 at 4 (pre-blast witness noticed no unusual smells); Supp. Rpt. 5 at 5-6 (ruling out oxygen as an explosive).) The bases for the conclusion that the cause was instead an IED are set forth as well. (*See generally* Supp. Rpt. 5 (discussing likely cause of explosion); *see* Supp. Rpt. 2 at 5 (noting that the "damage was consistent with a significant overpressure event originating inside of the room"); Supp. Rpt. 3 at 3 (noting witness stated that the victim appeared to be opening box when explosion occurred); Supp. Rpt. 2 at 6 (debris and body part dispersion).) Therefore, the disclosure as to the cause of the blast is also sufficient.

---

[2] These reports are designated Supplemental Reports 1 through 5.

#### D. Bomb Technicians

The report prepared by Chris Jensen and reviewed by Gregory Jensen is sufficiently disclosed as to the topics of scene assessment, scene description, and the seat of the explosion ("SOE"). (*See* Mot. at 32-34; Opp. at 23-24.) The report describes in detail the blast scene and the bases for the conclusion that the SOE was a 10' diameter space in the southeast corner of unit 110A of 11 Mareblu. (*See generally* Jensen Rpt.) The conclusion regarding the SOE is based on "witness statements, internal overpressure damage to the structure and contents, debris fields to the exterior of the structure, items of potential evidentiary value within and around the SOE, and the positioning of body parts and blast injury patterns sustained by the decedent." (*Id.* at 2.) Details regarding these bases are further described therein.

The disclosure described by Defendant as a "catch-all" category is sufficient because it summarizes the opinion of an as-yet-unspecified bomb technician that the explosion was caused by an IED. (*See* Mot. at 33-34.) The bases and reasons therefor are disclosed. Rule 16's 1993 note specifically contemplates instances in which the specific witness has not been identified and is instead identified by his or her qualifications only. *See* Fed. R. Crim. P. 16, 1993 note ("In some instances, a generic description of the likely witness and that witness's qualifications may be sufficient, e.g., where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available.").

### V. OTHER EXPERTS MOTION (DOC. 251)

#### A. Raleigh Parrott

Defendant objects to a number of disclosures as to this expert, who was disclosed in the field of chemical explosives. (Mot. at 6-10; Opp. at 12-14.) As was the case with Morefield, Parrot's testimony that three specific chemical combinations identified in the Government's November 22, 2021 letter (at 1-2) could be used to make an IED has been sufficiently disclosed. Parrott's experience, education, and training form the basis of this testimony. The conclusion that there are other such

non-specified combinations—and the bases therefor—is insufficiently disclosed; therefore, the existence of other, non-specified combinations may not be offered as evidence, absent further prompt disclosure, as ordered below. The disclosure regarding the use of "an oxygen balanced ratio" (Opp. at 12) appears to be background information as to the three specific combinations and, if it is, it is sufficiently disclosed.

### B. Diana Wright

Defendant objects to a number of disclosures as to Diana Wright, who was disclosed in the field of paints and polymers. (Mot. at 10-12; Opp. at 14-16.) Her reports identify similarities and differences among specified items found at the blast scene or seized from Defendant's residence. The methods used to make the comparisons—specific types of visual and chemical analyses—are set forth in each of her reports. The disclosures regarding these reports are sufficient. The disclosure of Wright's testimony regarding the basic science of polymers is also sufficiently disclosed.

### C. Susan Marvin

Defendant objects to a number of disclosures as to Susan Marvin, who was disclosed in the field of chemistry and metallurgy. (Mot. at 13-14; Opp. at 16-17.) She is expected to testify as to similarities and differences among wires and wire fragments seized from Defendant's residence and found at the blast scene. The methods used to make the comparisons—specific types of visual examination, microscopic examination, x-ray fluorescence spectroscopy, as well as adherence to specified standard operating procedures of the Chemistry Unit metallurgy laboratory practice—are indicated in her reports. The disclosures regarding the reports are sufficient. The disclosure of Marvin's testimony regarding the basic science of metallurgy, including the tendency of wires to decrease in diameter when stretched, is likewise sufficiently disclosed.

### D. Jessica Walker

Defendant objects to a number of disclosures as to Jessica Walker, who was disclosed as the Government's hair and fiber expert. (Mot. at 17-19; Opp. at 14-16.) The disclosure of the methods she uses to find such evidence and her experience regarding where hair and fiber evidence may be found is background information to which she may testify based on her education, experience, and training. The basis for the conclusion that hair and fiber evidence are more likely to be found in "undisturbed or protected portions of items" was disclosed as being because "the outside of an item" is likely to "have had contact with external forces making findings unreliable." (Oct. 29, 2021 Ltr. at 5.) This disclosure is sufficient.

### E. Jaclyn Garfinkle

Defendant objects to a number of disclosures as to Jacklyn Garfinkle, who was disclosed as a DNA expert. The results of the reports themselves are sufficiently disclosed. The testing methodology is described in the reports.

Moreover, as noted in section II, Garfinkle's testimony regarding the effects of heat on DNA is sufficiently disclosed.

To the extent testimony regarding the lack of evidence or reasons for not identifying DNA is mere background, it is sufficiently disclosed.

However, the reasons why certain items collected were not suitable for DNA testing are insufficiently disclosed. The items are not specified, and the reasons for failing to test those non-specified items are not disclosed. The Government's supplementation with eight characteristics of DNA evidence is an insufficient disclosure because the items are still not identified and there is no disclosure as to which of those eight characteristics apply to which item. (*See* Gov't Oct. 29, 2021 Ltr. at 4.) The Government must promptly disclose which items were not suitable for DNA testing, and the reasons those items were not suitable for testing.

### F. Erik Carpenter

Defendant objects to a number of disclosures as to Erik Carpenter, who was

16

disclosed as a fingerprint expert. (Mot. at 23-25; Opp. at 22-25.) The results of the reports themselves are sufficiently disclosed. The testing methodology is described in the reports. Except for the final sentence, the disclosure quoted in the Motion (at 23) describes mere background, which is sufficiently disclosed as having a basis of Carpenter's education, experience, and training.

The final sentence states that "[t]he witness is also expected to testify as to why some items collected during the investigation were not suitable for testing." (Mot. at 23.) This is an insufficient disclosure because it does not specify which items were not suitable to testing or why each item was not suitable for testing. The Government's supplemental disclosure may suggest some reason(s) why some items would not be suitable for testing, but the specific items remain unidentified, and there is no disclosure as to which of the general reasons disclosed by the Government applies to which item(s). (*See* Gov't Oct. 29, 2021 Ltr. at 5-6.) The Government must promptly disclose which items were not suitable for testing, and the reasons those items were not suitable for testing.

## V. CONCLUSION

The Court GRANTS in part Defendant's Motions and orders further disclosure as set forth below. The Government shall make its further disclosures no later than January 3, 2022.

As set forth herein, the Government is ordered to supplement its Rule 16(a)(1)(G) disclosures as follows:

As to all experts, to the extent the expert will testify that he or she relied on materials not discussed in his or her reports (such as technical or scholarly articles or scientific experiments) to reach a conclusion or form an opinion, the Government must disclose such reliance as "the bases or reasons for" the expert's opinion.

As to both Morefield and Parrot, the Government shall disclose which specific combinations of chemicals, other than the three combinations identified, could be used to make an IED.

     As to Morefield, the Government shall disclose which specific items, other than those already identified, could be used to make an IED.  The Government shall further disclose which specific items or types of items were not tested, the reason why those items or types of items were not tested and, if the reason is that the expert believed that the chance of finding helpful evidence was low, why he believed so.

     As to Garfinkle, the Government shall disclose which specific items collected were deemed unsuitable for DNA testing and, as to each item or type of item, why they were deemed unsuitable.

     As to Carpenter, the Government shall disclose which specific items collected were not suitable for fingerprint testing, and why, as to each such item or type of items.

     To the extent not expressly granted, Defendant's Motions are DENIED.

     The Court has ordered that this Order be filed provisionally under seal. Absent objection from any party, the Court will direct the Clerk to file it on the public docket. Any such objections must be filed within seven days of the entry of this Order.

     IT IS SO ORDERED.

     Dated:  December 23, 2021

**JOSEPHINE L. STATON**
_____
Hon. Josephine L. Staton
United States District Judge