UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　Plaintiff,<br><br>　　v.<br><br>STEPHEN BEAL,<br><br>　Defendant. | Case No. SACR 19-00047-JLS<br><br>**ORDER DENYING MOTION TO EXCLUDE IDENTIFICATION (Doc. 302)** |

　　　Presently before the Court is Defendant's Motion to Exclude Identification. (Doc. 302.) The matter is fully briefed and the Court heard argument on January 14, 2022. (*See* Docs. 328, 340, (Opp., Reply, respectively).) As set forth below, the Motion is DENIED.

　　　A surviving witness (referred to as "Victim 1") of the explosion that occurred at 11 Mareblu on May 15, 2018 is expected to identify a 12" x 6" x 6" cardboard box[1] as being "just like" or identical to a box that the deceased victim was in the process of opening at the time the blast occurred. The cardboard box the witness saw is described in a variety of ways, with varying estimates of its dimensions, but the accounts consistently describe a

---

[1] This box is referred to in expert reports and elsewhere as an "exemplar box." A photo of the exemplar box can be found in the record, Doc. 328-2 at 26, depicted with a 6" ruler to establish scale.

small cardboard box with tape on it.  (*See* Mot. Ex. 1 (report of Deputy Raglin, who interviewed the witness in the hours after the blast at the hospital, describing a "9" x 9" box that had unknown labeling on it"); *id.* Ex. 2 (report of Fire Investigator Captain J. Cass, describing a "10 x 10 inch cardboard package"); *id.* Ex. 3 at 37-39 (FBI Transcript of interview of Victim 1 on May 17, 2018, referring to a "cardboard box," "cardboard colored," smaller than "14 inches [or] 16 inches" high,[2] "not as long as a shoebox," "definitely rectangular," "probably shoebox height" but not as wide, with "writing or a label" and "brown packaging tape" or "shiny piece of tape"); *id.* Ex. 5 at 2 (FBI interview notes from about 10 days after the blast, describing a cardboard box "approximately the size of a shoe box but slightly taller in height and slightly shorter in length").)

On June 8, 2018, about three-and-a-half weeks after the explosion, FBI agents visited Victim 1 at her residence and showed her the exemplar box.  (Mot. Ex. 9 at 1.)  Upon seeing the exemplar box, Victim 1 stated:  "[Y]es, it was just like that box, if not the exact same one."  (*Id.*)[3]

Defendant moves to exclude the box, arguing by analogy that case law related to eyewitness identification of defendants should be applied to eyewitness identification of evidence, and that such case law would establish that the identification of the exemplar box was unconstitutionally suggestive.  (Mot. at 4-7.)  Alternatively, Defendant moves to exclude pursuant to Federal Rule of Evidence 403.  (Mot. at 7.)

Defendant relies on *Walden v. Shinn*, which sets forth the rule related to eyewitness identification:

---

[2] This description appears to be the product of Witness 1 indicating a size by gesturing, and FBI Agent Mark Claypool supplying an estimate based on those gestures.

[3] Well over two years later, when testifying before the grand jury, the witness gave a similar description. (*See* Opp. Ex. D (Grand Jury Dec. 19, 2018 Tr. at 23 ("So it wasn't quite a long as a maybe a shoebox, but maybe 12, 14 inches length wise, not that long width wise, so maybe, I don't know, six, seven inches width wise, and then height wise, it would be taller than a shoe box, so maybe a six inch, seven inches high, approximately."); *id.* at 24 ("There was some sort of writing on it, some sort of label, yes."); *id.* ("There was tape certainly on top. . . . I just remember it was shiny, so I don't know if it was clear or brown packaging tape, but I remember it being shiny.").)

>[A] due process challenge to eyewitness identifications is subject to a two-step inquiry: First, a court must decide whether the police used an unnecessarily suggestive identification procedure. Second, if there was improper police conduct, the court must then decide whether such police conduct created a substantial likelihood of misidentification. Reliability of the eyewitness identification is the linchpin of this evaluation.

*Walden v. Shinn*, 990 F.3d 1183, 1198 (9th Cir. 2021) (internal quotation marks omitted) (pet. for cert. filed Oct. 19, 2021).

This authority, and other cases like it, sets forth the standard for identifying persons, not inanimate objects. Assuming, without deciding, that Defendant's analogy is apt, the two-step analysis does not require exclusion of Victim 1's identification of the box.

First, the agents' conduct was not unnecessarily suggestive, therefore the first part of the test is not met. The record reveals only that agents showed Victim 1 the exemplar box, but not that they told her anything about the box. Most notably, of course, they did not tell her that the exemplar box matched the ones purchased by Defendant. This is not an unnecessarily suggestive identification procedure. Rather, it is consistent with the agents' prior attempts to have Victim 1 estimate the dimensions of the box she saw; instead of describing the size of the box in the abstract, she could look at the exemplar box and tell the agents if the box she saw was smaller, larger, had a different shape, etc., than the exemplar. It was not unduly suggestive to forego a "box lineup."

However, even if the Court were to apply the second part of the test, there is no substantial likelihood of misidentification. The record reveals only that when agents presented Victim 1 with the box, her statement was that the box she saw just before the explosion "was just like that box, if not the exact same one." (Mot. Ex. 9 at 1.) Overall, the standard describes the reliability of the eyewitness identification as the "linchpin" of the inquiry. *Walden*, 990 at 1198. Here, as noted above, notwithstanding minor variations in the estimates of the dimensions of the box, Victim 1's descriptions have been consistent every time she has been interviewed about the box. Thus, even if the Court accepted

Defendant's analogy, the Court would reject Defendant's challenge to the identification of the exemplar box.

Defendant's point regarding how the trauma of the explosion may have effected Victim 1's perception and memory is an appropriate subject for cross-examination. So too, is the procedure whereby Witness 1 identified the exemplar box.

Defendant's alternative Rule 403 argument also fails. The probative value of the evidence is high. There is evidence Defendant purchased three of the exemplar boxes eight days before the explosion. Victim 1's identification of the exemplar box, if believed, strongly suggests that the IED that exploded at 11 Mareblu was contained within that exact type of box. The danger of unfair prejudice is very low because, as noted above, the Court does not find the identification procedure unnecessarily suggestive and, given the consistency of Victim 1's description of the box, there is not a substantial likelihood that Victim 1 misidentified the exemplar box.

Defendant's Motion to Exclude Eyewitness Identification is therefore denied.

**IT IS SO ORDERED.**

DATED:  January 18, 2022

**JOSEPHINE L. STATON**
_____
HON. JOSEPHINE L. STATON
United States District Judge