TRACY L. WILKISON
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
ANNAMARTINE SALICK (Cal. Bar No. 309254)
WILSON PARK (Cal. Bar No. 239527)
MARIA JHAI (Cal. Bar No. 283059)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    United States Attorney's Office
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone:  (714) 338-3500
    Facsimile:  (714) 338-3561
    Email:      mark.takla@usdoj.gov
              annamartine.salick2@usdoj.gov
              wilson.park@usdoj.gov
              maria.jhai@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>               v.<br><br>STEPHEN WILLIAM BEAL,<br><br>               Defendant. | No. SA CR 19-047-JLS<br><br>GOVERNMENT'S TRIAL MEMO<br><br>Trial Date:  June 14, 2022<br>Trial Time:  9:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and undersigned counsel, hereby files its trial memorandum in the above captioned case.  The government respectfully requests

///

///

///

///

///

leave to file additional memoranda as may become appropriate before
or during the course of the trial.

Dated: May 24, 2022                 Respectfully submitted,

                                    TRACY L. WILKISON
                                    United States Attorney

                                    CHRISTOPHER D. GRIGG
                                    Assistant United States Attorney
                                    Chief, National Security Division


                                         /s/
                                    _____
                                    MARK TAKLA
                                    ANNMARTINE SALICK
                                    WILSON PARK
                                    MARIA JHAI
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                        PAGE(S)

TABLE OF AUTHORITIES.................................................ix

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    STATUS OF THE CASE.............................................1

      A.    Trial Status............................................1

      B.    Length of the Trial.....................................1

            1.    Number of Witnesses...............................1

            2.    Exhibits..........................................2

      C.    Defense Discovery and Affirmative Defenses..............3

II.   STATEMENT OF FACTS............................................3

      A.    On May 15, 2018, an Improvised Explosive Device in
            Aliso Viejo, California Killed Ildiko Krajnyak and
            Injured at Least Two Others.............................4

      B.    Identification and Search of Defendant's Residence......5

      C.    Defendant's Statements to Law Enforcement...............6

      D.    Discovery of a Battery and Bits of Wire at the Spa......7

      E.    The Chemical Makeup of the Charge.......................8

      F.    Defendant Drove the Prius to the Spa Four Days Before
            the Blast...............................................9

      G.    Defendant's Purchase of Items Connected to the Bombing....9

            1.    Purchase of the Company A Brand Battery...........9

            2.    Purchase of a Company Y Cardboard Box.............10

      H.    Defendant's Text Messaging..............................10

      I.    Additional Witness Statements...........................10

            1.    Defendant's Behavior..............................10

            2.    Krajnyak's Statements Regarding her State of Mind
                  and Future intent.................................11

III.  ELEMENTS OF THE CHARGED OFFENSES..............................11

IV.   EVIDENTIARY AND LEGAL ISSUES..................................11

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                      PAGE(S)

    A.    Expert Testimony.......................................11

    B.    Hearsay...............................................12

           1.    Business Records..................................12

           2.    Foreign Records of Regularly Conducted Activity.....12

           3.    Defendant's Statements............................13

           4.    Future Intent.....................................14

           5.    Questions.........................................16

           6.    Prior Consistent Statements.......................17

    C.    Authentication and Identification......................17

           1.    Physical Evidence and Chain of Custody.............17

           2.    Photographs.......................................18

           3.    Video and Audio Recordings........................19

           4.    Identification of Defendant.......................20

           5.    Social Media Accounts.............................20

           6.    Authentication of Digital Evidence................21

                a.    By Witness With Knowledge....................21

               b.    By Agent.....................................22

               c.    By Distinctive Characteristics...............23

    D.    Demonstratives........................................23

    E.    Summaries.............................................24

    F.    Impeaching Witnesses..................................25

    G.    Cross-Examination of Defendant........................26

    H.    Character Evidence....................................27

    I.    Defendant's Testimony Regarding Character/Impeachment
        by Contradiction......................................29

    J.    Lay Opinion Testimony.................................30

ii

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE(S)

      K.   Discretion as to Order of Proof..........................32

      L.   Stipulations of Fact.....................................33

      M.   Defendant Should Be Precluded from Affirmatively
          Entering Any Evidence Not Produced in Discovery..........33

      N.   Affirmative Defenses.....................................33

      O.   Identification of Defense Witnesses......................34

      P.   Jury Nullification.......................................34

V.    CONCLUSION...................................................35

1

**TABLE OF AUTHORITIES**

2

CASES                                                        PAGE(S)

Brandon v. Village of Maywood,
    179 F. Supp. 2d 847 (N.D. Ill. 2001) ......................... 32

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993) ........................................... 2

Gallego v. United States,
    276 F.2d 914 (9th Cir. 1960) ................................. 18

Horning v. District of Columbia,
    254 U.S. 135 (1920) .......................................... 34

Michelson v. United States,
    335 U.S. 469 (1948) .......................................... 27

Price v. Kramer,
    200 F.3d 1237 (9th Cir. 2000) ................................ 25

Rogers v. United States,
    422 U.S. 35 (1975) ........................................... 35

Stovall v. Denno,
    355 F.2d 731 (2d Cir. 1966) .................................. 20

Taylor v. Illinois,
    484 U.S. 400 (1988) .......................................... 33

Tennessee v. Street,
    471 U.S. 409 (1985) .......................................... 13

Thomas v. United States,
    343 F.2d 49 (9th Cir. 1965) .................................. 20

United States v. Alvarez,
    358 F.3d 1194 (9th Cir. 2004) ................................. 3

United States v. Avendano,
    455 F.2d 975 (9th Cir. 1972) ................................. 32

United States v. Baker,
    1997 WL 345825 (9th Cir. 1997) .............................. 16

United States v. Barlow,
    568 F.3d 215 (5th Cir. 2009) ................................. 22

iv

**TABLE OF AUTHORITIES (CONTINUED)**

CASES                                                                 PAGE(S)

United States v. Bishop,
    291 F.3d 1100 (9th Cir. 2002) ............................... 15

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) ............................... 17

United States v. Blackwell,
    954 F. Supp. 944 (D.N.J. 1997) .............................. 24

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989) ........................... 17, 19

United States v. Burreson,
    643 F.2d 1344 (9th Cir. 1981) ........................... 13, 14

United States v. Castillo,
    181 F.3d 1129 (9th Cir. 1999) ............................... 29

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991) ................................ 17

United States v. Clotaire,
    963 F.3d 1288 (11th Cir. 2020) .............................. 12

United States v. Collicott,
    92 F.3d 973 (9th Cir. 1996) ................................. 14

United States v. Cowley,
    720 F.2d 1037 (9th Cir. 1983) ............................... 12

United States v. Cueto,
    611 F.2d 1056 (5th Cir. 1980) ............................... 20

United States v. De Peri,
    778 F.2d 963 (9th Cir. 1985) ................................ 26

United States v. Dougherty,
    473 F.2d 1113 (D.C. Cir. 1972) .............................. 34

United States v. Emmert,
    829 F.2d 805 (9th Cir. 1987) ................................ 15

United States v. Fagan,
    996 F.2d 1009 (9th Cir. 1993) ............................... 27

United States v. Faust,
    850 F.2d 575 (9th Cir. 1988) ................................ 15

**TABLE OF AUTHORITIES (CONTINUED)**

CASES                                                                    PAGE(S)

United States v. Frantz, No. CR 02-01267(A)-MMM,

  2004 WL 5642909 (C.D. Cal. Apr. 23, 2004) ...................... 32

United States v. Freeman,

  498 F.3d 893 (9th Cir. 2007) ................................. 19

United States v. Gadson,

  763 F.3d 1189 (9th Cir. 2014) ............................... 30

United States v. Gagliardi,

  506 F.3d 389 (2d Cir. 2007) ................................. 22

United States v. Gaudin,

  515 U.S. 506 (1995) ......................................... 34

United States v. Gay,

  967 F.2d 322 (9th Cir. 1992) ................................ 26

United States v. Giese,

  597 F.2d 1170 (9th Cir. 1979) .......................... 28, 29

United States v. Gorham,

  523 F.2d 1088 (D.C. Cir. 1975) .............................. 35

United States v. Henderson,

  409 F.3d 1293 (11th Cir. 2005) .............................. 31

United States v. Jenkins,

  579 F.2d 840 (4th Cir. 1978) ................................ 16

United States v. Jones,

  933 F.2d 807 (10th Cir. 1991) ............................... 35

United States v. Kaiser,

  660 F.2d 724 (9th Cir. 1981) ............................ 17, 18

United States v. King,

  472 F.2d 1 (9th Cir. 1973) .................................. 18

United States v. King,

  587 F.2d 956 (9th Cir. 1978) ................................ 19

United States v. Lamm,

  5 F.4th 942 (8th Cir. July 29, 2021) ........................ 21

United States v. Lewis,

  902 F.2d 1176 (5th Cir. 1990) ............................... 16

**TABLE OF AUTHORITIES (CONTINUED)**

CASES                                                              PAGE(S)

United States v. Long,
    284 U.S. App. D.C. 405, 905 F.2d 1572 (D.C. Cir. 1990) ........ 16

United States v. Lopez-Figueroa,
    316 F. App'x 548 (9th Cir. 2008) ............................ 14

United States v. Malatesta,
    583 F.2d 748 (5th Cir. 1978) ................................ 20

United States v. Matta-Ballesteros,
    71 F.3d 754 (9th Cir. 1995) ................................. 18

United States v. May,
    622 F.2d 1000 (9th Cir. 1980) ............................... 18

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ................................. 28

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ............................... 26

United States v. Mitchell,
    502 F.3d 931 (9th Cir. 2007) ................................ 14

United States v. Natale,
    526 F.2d 1160 (2d Cir. 1975) ................................ 18

United States v. Noushfar,
    78 F.3d 1442 (9th Cir. 1996) ................................ 19

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978) ................................ 18

United States v. Oguns,
    921 F.2d 442 (2d Cir. 1990) ................................. 16

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ................................ 14

United States v. Perez,
    658 F.2d 654, 658 (9th Cir. 1981) ........................... 32

United States v. Pheaster,
    544 F.2d 353 (9th Cir. 1976) ............................ 15, 16

United States v. Pino-Noriega,
    189 F.3d 1089 (9th Cir. 1999) ............................... 30

**TABLE OF AUTHORITIES (CONTINUED)**

CASES                                                                    PAGE(S)

United States v. Powell,
  955 F.2d 1206 (9th Cir. 1991) ............................... 34

United States v. Robinson,
  967 F.2d 287 (9th Cir. 1992) ............................... 18

United States v. Safavian,
  435 F.Supp.2d 36 (D.D.C. 2006) .......................... 22, 23

United States v. Santana-Camacho,
  931 F.2d 966 (1st Cir. 1991) ............................... 27

United States v. Shyrock,
  342 F.3d 948 (9th Cir. 1977) ............................... 20

United States v. Siddiqui,
  235 F.3d 1318 (11th Cir. 2000) ............................. 23

United States v. Skeet,
  665 F.2d 983 (9th Cir. 1982) ............................... 30

United States v. Smith,
  591 F.3d 974 (8th Cir. 2010) ............................... 19

United States v. Stearns,
  550 F.2d 1167 (9th Cir. 1977) .............................. 18

United States v. Steele, No. 2:10-CR-148-BLW,
  2011 WL 841386 (D. Idaho Mar. 4, 2011) .................... 31

United States v. Tafollo-Cardenas,
  897 F.2d 976 (9th Cir. 1990) ............................... 12

United States v. Tank,
  200 F.3d 627 (9th Cir. 2000) ............................... 22

United States v. Taylor,
  802 F.2d 1108 (9th Cir. 1986) ............................... 3

United States v. Turner,
  528 F.2d 143 (9th Cir. 1975) ........................... 20, 32

United States v. Vest,
  842 F.2d 1319 (1st Cir. 1988) .............................. 16

United States v. VonWillie,
  59 F.3d 922 (9th Cir. 1995) ................................ 30

viii

# TABLE OF AUTHORITIES (CONTINUED)

CASES                                                      PAGE(S)

United States v. Washington Water Power Co.,
    793 F.2d 1079 (9th Cir. 1986) ........................... 15

United States v. Weiner,
    578 F.2d 757 (9th Cir. 1978) ............................ 25

United States v. Whitaker,
    127 F.3d 595 (7th Cir. 1997) ............................ 22

United States v. Whitman,
    771 F.2d 1348 (9th Cir. 1985) ........................... 13

United States v. Wright,
    412 F. App'x 993 (9th Cir. 2011) ........................ 24

United States v. Zemek,
    634 F.2d 1159 (9th Cir. 1980) ........................... 32

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) ............................ 35

STATUTES                                                   PAGE(S)

18 U.S.C. § 844 ............................................. 1

18 U.S.C. § 924 ............................................. 1

18 U.S.C. § 2332a ........................................... 1

RULES                                                      PAGE(S)

Fed. R. Crim. P. 12.1 ...................................... 34

Fed. R. Crim. P. 12.2 ...................................... 34

Fed. R. Crim. P. 16 .................................... 30, 33

Fed. R. Crim. P. 26.2 ....................................... 3

Fed. R. Evid. 401 .......................................... 18

Fed. R. Evid. 404 .................................. 10, 27, 28

Fed. R. Evid. 405 .......................................... 28

Fed. R. Evid. 607 .......................................... 29

Fed. R. Evid. 608 .................................. 25, 26, 29

Fed. R. Evid. 611 .................................... 24, 25

## TABLE OF AUTHORITIES (CONTINUED)

CASES                                                             PAGE(S)

Fed. R. Evid. 613 ............................................. 27

Fed. R. Evid. 701 ......................................... 30, 31

Fed. R. Evid. 702 ............................................. 32

Fed. R. Evid. 801 ......................................... passim

Fed. R. Evid. 802 ......................................... 12, 14

Fed. R. Evid. 803 ..................................... 12, 14, 15

Fed. R. Evid. 804 ............................................. 12

Fed. R. Evid. 807 ............................................. 12

Fed. R. Evid. 901 ......................................... passim

Fed. R. Evid. 902 .......................................... 1, 12

Fed. R. Evid. 1006 ........................................... 24

1

## MEMORANDUM OF POINTS AND AUTHORITIES

As the Court is aware, the parties have engaged in extensive pretrial motion practice in this case.  The government does not intend to reiterate all the facts and arguments presented during the pretrial motion practice, but intends to use this memorandum to identify trial issues not yet raised before the Court.

## I.    STATUS OF THE CASE

### A.    Trial Status

Defendant is charged with violations of 18 U.S.C. § 2332a(a)(2) (Use of a Weapon of Mass Destruction Resulting in Death); 18 U.S.C. § 844(i) (Malicious Destruction of a Building Resulting in Death); and 18 U.S.C. § 924(c) (Use of a Destructive Device During and in Relation to a Crime of Violence) in connection with his use of a bomb on May 15, 2018 to intentionally murder his ex-girlfriend, Ildiko Krajnyak ("Krajnyak").

Trial is set to commence on June 14, 2022 at 9:00 a.m. Defendant is in custody pending trial.

### B.    Length of the Trial

#### 1.    Number of Witnesses

The government expects that its case-in-chief (with a reasonable allotment for cross-examination) will take approximately six to seven weeks.  Depending on stipulations and pretrial motions, the government expects to call approximately 105 witnesses at trial.  The government may call other witnesses as needed to establish the authenticity of business records to the extent defendant objects to authentication under Federal Rule of Evidence 902(11), for which the government has previously provided notice.  The government may seek

to introduce evidence pursuant to stipulations.  The government may also call rebuttal witnesses if necessary following defendant's case.

The government has provided notice of expert testimony.  Much of this testimony has been subject to multiple motions filed by defendant.  The Court previously denied defendant's motions to exclude the government's noticed expert opinions on the grounds of lack of notice (Dkt. 325) and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579, 597 (1993).

On November 4, 2021, December 31, 2021, May 10, 2022 (final witness list), and May 17, 2022 (general witness order), the government provided a list of the government's witnesses to defendant.  On May 20, 2022, the government filed a witness list which included the government's time estimates for direct examination.  The parties have not reached an agreement on whether each party will provide additional notice to the opposing side regarding which witnesses will be called the following trial day.

## 2. Exhibits

The government intends to offer approximately 1,400 documentary exhibits in its case in chief.  The majority of these exhibits are pictures of the damage at 11 Mareblu and of items of evidentiary value found at 11 Mareblu and defendant's residence.[1]

The government intends to offer approximately 100 physical exhibits, largely comprising items of evidentiary value found at 11 Mareblu and defendant's residence.

---

[1] Some of the documentary exhibits include images of Krajnyak's body at the blast site and autopsy, and pictures of the injuries of the surviving victims.  The government has already identified these exhibits for defendant.  The government intends to offer a select number of exhibits to ensure they have probative value and avoid unnecessary gruesomeness.

2

1    The government also intends to offer approximately six hours of

2 digital recordings of defendant's three interviews with law

3 enforcement. The government provided early draft copies of the

4 transcripts of these interviews and, later, final versions.

5 Defendant has not objected to the transcripts.

6    **C.  Defense Discovery and Affirmative Defenses**

7    The government has requested reciprocal discovery and reciprocal

8 Jencks material from defendant.  Defendant's reciprocal discovery

9 disclosure deadline was February 1, 2022.  To date, defendant has not

10 provided any discovery.

11    The Court cannot order early disclosure of either party's

12 witness statements pursuant to Federal Rule of Criminal Procedure

13 ("Rule") 26.2.  Similarly, the Court cannot compel early disclosure

14 of Jencks Act material.  United States v. Taylor, 802 F.2d 1108, 1118

15 (9th Cir. 1986) (order for the government to disclose Jencks material

16 prior to trial "was itself inconsistent with the express provision of

17 the Jencks Act and therefore unenforceable"); see also United States

18 v. Alvarez, 358 F.3d 1194, 1211 (9th Cir. 2004).

19    The parties have not reached an agreement as to voluntary early

20 disclosure of Rule 26.2 or Jencks Act material.

21 **II.  STATEMENT OF FACTS[2]**

22    On Tuesday, May 15, 2018 at approximately 1:05 p.m., an

23 explosion occurred at a commercial office building located at 11

24 Mareblu in Aliso Viejo, California.  The explosion instantly killed

25 Ildiko Krajnyak ("Krajnyak"), the owner of a day spa called Magyar

26

27

28    [2] The statement of facts is not intended to be a complete
summary of all facts the government intends to elicit at trial.

3

Kozmetika, and seriously injured two of her clients.  The two clients were severely burned.

### A. On May 15, 2018, an Improvised Explosive Device in Aliso Viejo, California Killed Ildiko Krajnyak and Injured at Least Two Others

After the explosion, OCSD deputies observed smoke and fire coming from the first floor of the Mareblu Building and broken window glass and debris in the parking lot.  OCSD deputies evacuated the immediate area.

The Orange County Fire Authority ("OCFA") and Orange County Sheriff's Department ("OCSD") Bomb Squad personnel entered the building and discovered human remains outside of a broken window and in the parking lot of an adjacent building.  The human remains were later identified as belonging to Krajnyak.  OCFA located two women who were injured, but alive, outside a day spa called Magyar Kozmetica (the "Spa") in Suite 110A of the Mareblu Building.  The Spa appeared to be the location of the explosion.  The injured women, Victim #1 and Victim #2, were patrons of the Spa, which Krajnyak operated.

OCSD personnel, Federal Bureau of Investigation ("FBI") Evidence Response Team members, and bomb technicians responded to the scene and entered the Mareblu Building.  After clearing the building for possible secondary explosive devices, law enforcement personnel located the blast seat, or origin, of the explosion inside Suite 110A.  Law enforcement personnel observed significant damage to the building's interior and exterior, consistent with an explosive incident.  Suite 110A's ceiling was blown open and the floor of the unit above Suite 110A was buckled.  The glass from the unit's windows was blown into the parking lot.

1    FBI Special Agents, OCSD deputies, and fire investigators spoke

2    with Victim #1 on several occasions.  She stated:

3         a.   On May 15, 2018, Victim #1 and Victim #2 went to the

4    Spa and received spa treatments from Krajnyak.  They were the only

5    patrons of the Spa when the explosion occurred.

6         b.   After their spa treatments, Victim #1 saw Krajnyak at

7    a desk attempting to open a cardboard box.  Victim #1 described the

8    box as brown and of a particular size.  As soon as Krajnyak appeared

9    to open the box, Victim #1 saw it explode and recalled being blown

10   backwards by the explosion onto the floor.  She also saw flames and

11   smoke.  Following the explosion, Victim #1 and Victim #2 left the

12   building and waited for help to arrive.  Victim #1 did not see what

13   happened to Krajnyak.

14   **B.   Identification and Search of Defendant's Residence**

15   On May 15, 2018, defendant called the OCSD and stated that he

16   had heard of the explosion in Aliso Viejo and that he was an owner

17   and co-tenant of the esthetician office in unit 110.  He also stated

18   Krajnyak was his friend and "ex-wife," and provided his telephone

19   number.

20   A few hours later on May 15, 2018, OCSD and FBI bomb technicians

21   arrived at defendant's residence in Long Beach after an OCSD deputy

22   saw packages being delivered to defendant's residence.  Defendant was

23   present and consented to a search of the residence.  In the garage,

24   bomb technicians found precursors to make explosives.  The labels on

25   the containers included potassium perchlorate (a common oxidizer used

26   in pyrotechnics), red gum (an organic fuel and binder commonly used

27   in pyrotechnics), and several unmarked metal tins resembling black

28   powder containers.

On May 16, 2018 at approximately 1:16 a.m., a judge of the Superior Court of California, County of Orange, signed a search warrant for defendant's residence and vehicle.

At defendant's residence, law enforcement found:

       a.   Approximately 130 pounds of explosive precursors, including potassium perchlorate, potassium chlorate, ammonium perchlorate, aluminum powder and flake, and sulfur powder;

       b.   Containers of black powder, numerous other energetic powders (which were determined to be energetic based on field testing), and low explosive residues;

       c.   A homemade device with references to rocketry and containing wires of multiple colors ("Homemade Device");

       d.   Screens used for mixing and sifting chemicals;

       e.   Electric matches, wires, battery connectors, a soldering iron, and other items that could be used to make improvised explosive devices; and

       f.   Tubes and materials consistent with the making of model rockets.

**C.  Defendant's Statements to Law Enforcement**

FBI special agents and OCSD deputies interviewed defendant three times from May 15-16, 2018.  The first two interviews were conducted at defendant's residence.  The third interview was conducted when defendant, without prompting, voluntarily drove to the OCSD office in Aliso Viejo, California.  Defendant's statements included the following:

Defendant stated his romantic relationship with Krajnyak "cooled" in early 2018.  Defendant stated he took a trip with Krajnyak to Portugal during which Krajnyak admitted to defendant that

6

she was in an intimate relationship with another man from Northern California.  Defendant stated he was hurt and betrayed when Krajnyak told him this.

Defendant stated the only individuals with keys to the Spa were Krajnyak, defendant, the building owner, the cleaning crew, and the handyman.

Defendant stated he was last at the Mareblu Building on May 3, 4, or 5, 2018 to pick up the rent check.  He stated he was also there on May 7, 8, or 9, 2018, to check whether the Spa had a 220-volt outlet.  Defendant stated he had access to Krajnyak's schedule and knew she boarded a plane from Hungary to the United States on May 13, 2018.

Defendant said he had chemicals in his garage for making fireworks and model rockets.  He stated he is a model rocket hobbyist.  Defendant stated that it had been years since he made model rockets or fireworks.

**D.   Discovery of a Battery and Bits of Wire at the Spa**

Law enforcement recovered a partially destroyed Company A brand battery at the Spa.  An FBI explosives devices expert stated the extent of damage and location of the battery jacket and cells meant that it was in intimate contact with the explosive device when the device went off.

Law enforcement recovered bits of wire ("bits of wire") at the Spa.  The FBI explosives devices expert stated the extent of damage and location of the bits of wire meant that they were in close contact with the explosive device when the device went off.  The FBI laboratory experts are expected to testify that wire found at defendant's residence was compared with the bits of wire found at the

7

1   Mareblu Building.  Both items contained 24-25 American Gauge wire,

2   with the same color plastic insulation, and were initially part of a

3   parallel, multi-conductor cord.  Based on the metallurgic and

4   paint/polymer chemistry, FBI laboratory experts stated that no

5   meaningful differences were observed.  The FBI explosives device

6   expert will testify that this type of wire is commonly used in

7   pyrotechnic charge connections and for the manufacture of electric

8   matches and detonators.

9          **E.   The Chemical Makeup of the Charge**

10          The FBI explosives chemist is expected to testify that he found

11   chlorate, perchlorate, potassium, and ammonium ions on swabs taken

12   from Krajnyak and the Spa.  He is also expected to testify that he

13   found chlorate, sulfate, and potassium ions on swabs taken from

14   defendant's vehicle.  He is expected to testify that the bomb was

15   made with a chlorate- or perchlorate-based oxidizer within an

16   explosive composition.

17          The FBI explosives device expert is expected to testify that the

18   explosion at the Mareblu Building on May 15, 2018 was caused by an

19   improvised explosive device ("IED").  The chemical analysis of swabs

20   taken from the Mareblu Building could indicate the use of a a variety

21   of fuels, including, e.g., aluminum or sulfur.

22          Chemical samples from the victim and the Spa are consistent with

23   residue that would be found if defendant made the IED using the

24   materials recovered from defendant's residence.  Further, the

25   chemical samples taken from defendant's Toyota Prius—-purchased in

26   February 2018--are consistent with residue that would be found if

27   defendant used his car to transport the IED.

28

**F.    Defendant Drove the Prius to the Spa Four Days Before the Blast**

According to records provided by defendant's cellular telephone carrier, on May 11, 2018 at approximately 4:16 p.m., defendant's cellular telephone connected to the cellular tower at 15 Mareblu, Aliso Viejo, California.  This tower is adjacent to the Spa.

Closed-circuit television ("CCTV") footage from a preschool across the street from the Mareblu Building shows that on May 11, 2018, at approximately 4:24 p.m., a silver 2017 Toyota Prius, matching the description of defendant's Toyota Prius, drove northbound on Mareblu toward the Spa.  At approximately 4:34 p.m., the footage showed the Toyota Prius departing southbound on Mareblu away from the Spa.  CCTV footage from a retail store located on La Paz Road in Aliso Viejo, California, approximately one block away from the Mareblu Building, shows a 2017 Toyota Prius matching defendant's Prius entering the retail store parking lot at approximately 4:35 p.m.  Store surveillance video shows defendant, wearing blue jeans and a long-sleeve dark blue patterned button-up shirt, exiting the retail store at approximately 4:49 p.m.

**G.    Defendant's Purchase of Items Connected to the Bombing**

1.    <u>Purchase of the Company A Brand Battery</u>

Company A personnel provided the FBI a receipt of a Company A brand battery purchased with cash on May 8, 2018, at approximately 2:30 p.m.  Company A also provided surveillance footage of the purchaser.  Defendant was the person who purchased the battery on May 8, 2018.  As noted above, law enforcement recovered a partially destroyed Company A brand battery at the Spa which expert testimony will establish was a component of the IED.

2. <u>Purchase of a Company Y Cardboard Box</u>

Company Y personnel provided the FBI a receipt for the purchase of three identical cardboard boxes on May 7, 2018 at 12:43 p.m. and the surveillance footage of the purchaser.  Defendant was the person who purchased the boxes on May 7, 2018.

Victim #1 is expected to testify that the box he/she saw Krajnyak open was identical to the box defendant purchased on May 7, 2018.

**H.   Defendant's Text Messaging**

The government intends to present communications between defendant and Krajnyak.  These communications include text messages and emails relating to the Spa as well as their romantic relationship.

**I.   Additional Witness Statements**

The government expects to call witnesses who will testify as to their observations of Krajnyak and defendant's business and romantic relationship.  The Court denied defendant's motion to exclude such testimony under Federal Rule of Evidence 404(b).

1. <u>Defendant's Behavior</u>

Krajnyak's clients and friends observed defendant parked outside of Krajnyak's workplace for hours, watching Krajnyak and the Spa's comings and goings from the parking lot; showing up at the Spa unannounced in an attempt to reconcile with Krajnyak; and ignoring Krajnyak's pleas to leave her alone.

Krajnyak also confided in her friends and clients, telling them that defendant was "freaking her out" with his constant monitoring and jealous attempts to control her life.  Based on their personal

observations, these friends formed lay opinions of defendant as suspicious, creepy, possessive, and obsessed with Krajnyak.

 2.  Krajnyak's Statements Regarding her State of Mind and Future intent

The government intends to introduce testimony from Krajnyak's clients and friends regarding statements Krajnyak made to them regarding her desire to end her romantic and business relationship with defendant and her frustration and annoyance with defendant's refusal to leave her alone.

**III. ELEMENTS OF THE CHARGED OFFENSES**

On May 13, 2022, the Court held a hearing on jury instructions, following briefing by both parties as to disputed instructions. (Dkt. 552.)  In light of that briefing, the government feels it unnecessary to identify the disputed issues again here.

**IV.  EVIDENTIARY AND LEGAL ISSUES**

 **A.  Expert Testimony**

The anticipated testimony of the government's noticed experts was the subject of previously filed motions.  Those experts include FBI laboratory experts, bomb technicians, and arson investigators.

In addition to these experts, the government intends to offer computer forensic experts, a cellular site analysis expert, physicians, and rocketry experts.

Absent a stipulation, the computer experts will authenticate information found on defendant's, Krajnyak's, and others' digital devices.

Relating to physicians, a coroner will testify as to Krajnyak's cause of death.  Absent stipulation, a dentist will testify as to the decedent's identity.  A blast expert doctor will testify that the

injuries sustained by the three victims were consistent with injuries cause by an IED.

Finally, rocketry experts will testify as to the skill set one needs in order to obtain a level 3 certification relating to the launching of rockets.

**B.   Hearsay**

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c); <u>United States v. Cowley</u>, 720 F.2d 1037, 1044 (9th Cir. 1983).  A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended to be an assertion.  <u>See</u> Fed. R. Evid. 801(a).  Hearsay is admissible as substantive evidence only as provided by the Federal Rules of Evidence.  <u>See</u> Fed. R. Evid. 802, 803, 804, 807; <u>United States v. Tafollo-Cardenas</u>, 897 F.2d 976, 979 (9th Cir. 1990).

**1.   Business Records**

The government intends to introduce certified records of business activities made and kept in the regular course of the business.  These documents are self-authenticating under Federal Rules of Evidence 803(6) and 902(11).  Close circuit television footage can be self-authenticated as a business record under Federal Rules of Evidence 803(6) and 902(11).  <u>United States v. Clotaire</u>, 963 F.3d 1288, 1293 (11th Cir. 2020).  The government has provided the notice required under Rule 902(11).

**2.   Foreign Records of Regularly Conducted Activity**

The government intends to introduce records from a foreign battery company.  The records have been subject to extensive

12

litigation.  On May 4, 2022, the parties deposed the custodian of records.  The Court has set a briefing schedule for motions relating to admission of the records and deposition at trial.

### 3.  Defendant's Statements

The government intends to admit statements made by defendant, including in recorded conversations, email, and Skype conversations. Statements by a party opponent when offered against that party are excluded from the hearsay definition.  See Fed. R. Evid. 801(d)(2)(A).  Thus, defendant's statements may be admitted against him.  Statements not offered for their truth, but to provide context for what the defendant has said, such as the statements by Krajnyak or others in conversation with defendant, are not hearsay.  See United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (upholding admission of recorded conversations between government informant and the defendant's co-conspirator, as the "statements were not admitted for their truth but to enable the jury to understand the [co-conspirator's] taped statements").  The admission of non-hearsay statements generally does not violate the Confrontation Clause.  See Tennessee v. Street, 471 U.S. 409, 414 (1985) (noting that non-hearsay "raises no Confrontation Clause concerns").

Defendant may not introduce his own prior statements, either on direct examination of his own witnesses or cross-examination of the government's witnesses, because, when offered by the defendant, the statements are hearsay.  See Fed. R. Evid. 801(d)(2); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981).  Accordingly, exculpatory statements made by a defendant are hearsay and are not admissible at trial, when offered by the defendant.  See Fed. R.

1  Evid. 801(d), 802; <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th
2  Cir. 2000).

3      The only recognized limitation of this principle is the
4  "doctrine of completeness," which has been applied by some courts to
5  admit additional portions of a defendant's prior statements where
6  necessary to explain an admitted statement, place it in context, or
7  avoid misleading the trier of fact.  <u>See</u> Fed. R. Evid. 106; <u>Burreson</u>,
8  643 F.2d at 1349.  However, the completeness doctrine does not
9  require introduction of portions of a statement that are neither
10 explanatory of, nor relevant to, the admitted passages.  <u>See</u> <u>United</u>
11 <u>States v. Mitchell</u>, 502 F.3d 931, 965 (9th Cir. 2007); <u>United States</u>
12 <u>v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Federal
13 Rule of Evidence 106 does not compel admission of otherwise
14 inadmissible hearsay evidence); <u>see also</u> <u>United States v. Lopez-</u>
15 <u>Figueroa</u>, 316 F. App'x 548, 550 (9th Cir. 2008) (defendant could not
16 introduce own statements redacted from confession by government).  As
17 the Ninth Circuit recognized, "it is often perfectly proper to admit
18 segments . . . without including everything, and adverse parties are
19 not entitled to offer additional segments just because they are there
20 and the proponent has not offered them."  <u>Collicott</u>, 92 F.3d at 983.

21          4.  <u>Future Intent</u>

22     An out-of-court statement is admissible if the statement
23 reflects the declarant's "then-existing state of mind (such as
24 motive, intent, or plan) or emotional, sensory, or physical
25 condition."  Fed. R. Evid. 803(3).  "[W]hen the performance of a
26 particular act by an individual is an issue in a case, [her]
27 intention (state of mind) to perform that act may be shown.  From
28 that intention, the trier of fact may draw the inference that the

person carried out [her] intention and performed the act." United States v. Pheaster, 544 F.2d 353, 376 (9th Cir. 1976) (citing Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285 (1892)).  Evidence of intent to commit an act tends to prove the doing of the act intended. See United States v. Washington Water Power Co., 793 F.2d 1079, 1082 n.4 (9th Cir. 1986) (citing Fed. R. Evid. 803(3), 1972 advisory committee's note).  The Ninth Circuit "has identified three factors 'bearing on the foundational inquiry of admissibility' under 803(3): contemporaneousness, chance for reflection, and relevance."  United States v. Emmert, 829 F.2d 805, 810 (9th Cir. 1987) (citations omitted).

The government expects to introduce testimony from witnesses regarding Krajnyak's statements of future intent to end her relationship with the defendant.  These statements show Krajnyak's intent to commit an act, ending her romantic and business relationships with the defendant, and are thus admissible under Rule 803(3).  See United States v. Bishop, 291 F.3d 1100, 1110 (9th Cir. 2002) ("Statements of intent to perform a future act are admissible 'state of mind' testimony under 803(3).").

Testimony will establish that these statements pass the Ninth Circuit's contemporaneous, reflection, and relevance tests in that Krajnyak had no time or reason to misrepresent her intent.  She did not make any of these statements to an attorney or law enforcement member and she did know that her statements would have any later legal effect.  Krajnyak's statements were spontaneous remarks made to friends, and thus do not resemble the kind of carefully calculated statements which the Ninth Circuit has excluded.  See, e.g., United States v. Faust, 850 F.2d 575, 585-86 (9th Cir. 1988) (excluding

15

statements of future intent when "the circumstances in this case
allowed [the declarant] to think long and hard before drafting the
letter.  Indeed, the fact that [the declarant] went through several
drafts indicates that he had ample time to reflect upon his
statements."). Further, the statements were not too remote in time
to be admissible since they were made mere months before the crime
occurred.  See United States v. Baker, 1997 WL 345825, at *1 (9th
Cir. 1997) (unpublished) (holding that an argument that a two-year
old statement of future intent was too remote "lack[ed] merit").

The statements are also relevant because they help explain
defendant's actions and shed light on his motivation to commit the
charged crimes.  See United States v. Jenkins, 579 F.2d 840, 843 (4th
Cir. 1978) (admitting a declarant's statements of future intent "to
explain [the defendant's] subsequent actions" when they "attacked
[the defendant's] explanation to the grand jury as to why he set out"
on a chain of conduct); Pheaster, 544 F.2d at 376 ("the state of mind
of the declarant is used inferentially to prove other matters which
are in issue").  To wit, evidence of Krajnyak's intention to end the
relationship is relevant to explain defendant's decision to kill her.

5.   Questions

A question is not hearsay because a question cannot be a
statement offered to prove the truth of the matter asserted.  United
States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990); United States v.
Long, 284 U.S. App. D.C. 405, 905 F.2d 1572, 1579-80 (D.C. Cir.
1990); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir.
1990); United States v. Vest, 842 F.2d 1319, 1330 (1st Cir. 1988).

1

         6.   Prior Consistent Statements

2        Prior consistent statements are admissible to rehabilitate a

3  witness whose credibility has been attacked.  Fed. R. Evid. 801, 2014

4  Amendment Committee Notes.

5    **C.  Authentication and Identification**

6        The requirement of authentication or identification as a

7  condition precedent to admissibility is satisfied by "evidence

8  sufficient to support a finding that the item is what the proponent

9  claims it is."  Fed. R. Evid. 901(a).  Federal Rule of Evidence

10  901(a) requires that the government "make only a prima facie showing

11  of authenticity 'so that a reasonable juror could find in favor of

12  authenticity or identification.'"  United States v. Chu Kong Yin, 935

13  F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood,

14  878 F.2d 1200, 1202 (9th Cir. 1989)); see also United States v.

15  Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  Once the government

16  meets this burden, "[t]he credibility or probative force of the

17  evidence offered is, ultimately, an issue for the jury." Black, 767

18  F.2d at 1342.

19         1.   Physical Evidence and Chain of Custody

20        The test of admissibility of physical objects connected with the

21  commission of a crime requires a showing that the object is in

22  substantially the same condition as when the crime was committed (or

23  the object seized).  Factors to be considered are the nature of the

24  article, the circumstances surrounding its preservation and custody

25  and the likelihood of intermediaries tampering with it.  There is,

26  however, a presumption of regularity in the handling of exhibits by

27  public officials.  United States v. Kaiser, 660 F.2d 724, 733 (9th

28  Cir. 1981), overruled on other grounds by United States v. De Bright,

1   730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).  The authenticity of

2   proposed exhibits may be proven by circumstantial evidence.  United

3   States v. Natale, 526 F.2d 1160, 1173 (2d Cir. 1975); United States

4   v. King, 472 F.2d 1, 9-11 (9th Cir. 1973).  Moreover, the prosecution

5   need only prove a rational basis from which the jury may conclude

6   that the exhibits did, in fact, belong to the defendant.  Fed. R.

7   Evid. 401(a).

8        If the trial judge finds that there is a reasonable possibility

9   that the piece of evidence has not changed in a material way, the

10  Court has discretion to admit the evidence.  Kaiser, 660 F.2d at 733.

11  The government is not required, in establishing chain of custody, to

12  call all persons who may have come into contact with the piece of

13  evidence.  Gallego v. United States, 276 F.2d 914, 917 (9th Cir.

14  1960).  Gaps or defects in chain of custody go to the weight of the

15  evidence rather than its admissibility.  United States v. Matta-

16  Ballesteros, 71 F.3d 754, 769-70 (9th Cir. 1995); United States v.

17  Robinson, 967 F.2d 287, 292 (9th Cir. 1992).

18            2.   Photographs

19       Photographs are generally admissible as evidence.  See United

20  States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs

21  of crime scene admissible).  Photographs should be admitted so long

22  as they fairly and accurately represent the event or object in

23  question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir.

24  1978).  The Ninth Circuit has held that "[p]hotographs are admissible

25  as substantive as well as illustrative evidence."  United States v.

26  May, 622 F.2d 1000, 1007 (9th Cir. 1980).

27

28

                                   18

1

### 3.   Video and Audio Recordings

2  The government will introduce numerous clips from video and
3  audio recordings of defendant's interviews with law enforcement.
4  Recordings are admissible upon a showing that it is "accurate,
5  authentic, and generally trustworthy."  United States v. King, 587
6  F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a
7  recording depicts evidence that the witness observed is sufficient to
8  authenticate the recording.  Fed. R. Evid. 901(b); United States v.
9  Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).  As long as the
10  government makes a prima facie showing of authenticity, the
11  "probative force of the evidence offered is, ultimately, an issue for
12  the jury."  United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir.
13  1989).

14  All duly admitted recorded conversations must be played in open
15  court.  Allowing jurors to take into the jury deliberation room
16  recorded conversations that were not played in open court is
17  structural error requiring automatic reversal if a defendant objects
18  to allowing the jurors to have the un-played calls in the jury room.
19  United States v. Noushfar, 78 F.3d 1442, 1445-46 (9th Cir. 1996).

20  A lay witness, including a participant in a recorded
21  conversation, may give opinion testimony on the meaning of otherwise
22  vague or ambiguous statements made in the recordings.  See United
23  States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007) ("A lay witness
24  may provide opinion testimony regarding the meaning of vague or
25  ambiguous statements [in recorded conversations]"); United States v.
26  De Peri, 778 F.2d 963, 977-78 (9th Cir. 1985).

27  The government has prepared written transcripts of the
28  recordings as an aid to the jury in listening to recordings.  See

19

1  United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975)

2  (permitting the transcripts of sound recordings to be used

3  contemporaneously with the introduction of the recordings into

4  evidence).  Copies of the government's transcripts have been provided

5  to the defense and are available, should the Court desire them in

6  advance of trial.  The transcripts will be displayed on a screen

7  simultaneous to the playing of the audio/video files, but the

8  transcripts will not be admitted into evidence.

9            4.   Identification of Defendant

10      The prosecution is entitled to produce any evidence tending to

11  establish a defendant's identity.  Thomas v. United States, 343 F.2d

12  49, 53 (9th Cir. 1965); Stovall v. Denno, 355 F.2d 731, 736-37 (2d

13  Cir. 1966).  A prior identification outside the courtroom is

14  admissible not only to corroborate an identification made at trial,

15  but also as independent evidence of identity.  Under Federal Rule of

16  Evidence 801(d)(1)(C), the testimony of a declarant testifying at

17  trial and subject to cross-examination as to a prior identification

18  of a person after perceiving him or her is not hearsay, even if the

19  prior identification is equivocal.  United States v. Shyrock, 342

20  F.3d 948, 982 (9th Cir. 1977); United States v. Cueto, 611 F.2d 1056,

21  1063 (5th Cir. 1980); Fed. R. Evid. 801(d)(1)(C).  The fact that an

22  identification in court is less than positive does not render it

23  inadmissible.  United States v. Malatesta, 583 F.2d 748 (5th Cir.

24  1978).

25            5.   Social Media Accounts

26      The government will introduce evidence of social media accounts

27  used by defendant and Krajnyak.  Circumstantial evidence is

28  sufficient to establish the authenticity of social media accounts.

1   United States v. Lamm, 5 F.4th 942, 948 (8th Cir. July 29, 2021)

2   (finding authentication requirement met because the government

3   (1) linked the same cell phone number, in the defendant's name, to

4   the accounts; (2) showed that some images that appeared on the

5   defendant's real name account appeared on the fictitiously named

6   account; (3) showed that the defendant had copies of images from both

7   accounts on memory cards in his apartment; and (4) showed that online

8   subscriptions found on the defendant's computer used an email address

9   containing the fictitious name).

10          6.   Authentication of Digital Evidence

11       At trial, the government will seek to admit electronic evidence

12   obtained during the course of the investigation.   The electronic

13   evidence includes emails, text messages, and records, videos and

14   photographs obtained from the seized computers in this case.

15       The foundational "requirement of authentication or

16   identification as a condition precedent to admissibility is satisfied

17   by evidence sufficient to support a finding that the matter in

18   question is what its proponent claims."   Fed. R. Evid. 901(a).   Rule

19   901(a) only requires the government to make a prima facie showing of

20   authenticity or identification "so that a reasonable juror could find

21   in favor of authenticity or identification."   Once the threshold

22   showing has been met to admit the document, any questions concerning

23   the genuineness of the item normally go to the weight of the

24   evidence.   Through a number of established means, electronic

25   evidence will be authenticated in this case, as noted below:

26          a.   By Witness With Knowledge

27

28

1     As with other records, text communications, and other records

2 obtained from the seized computer may be authenticated under Fed. R.

3 Evid. 901(b) by a witness with knowledge.  For example, this permits

4 authentication by a witness who participated in the e-mail or chat

5 communications.  See, e.g., United States v. Gagliardi, 506 F.3d 389,

6 392-93 (2d Cir. 2007); see also United States v. Barlow, 568 F.3d

7 215, 220 & n.17 (5th Cir. 2009); United States v. Tank, 200 F.3d 627,

8 630 (9th Cir. 2000); United States v. Safavian, 435 F. Supp. 2d 36,

9 40 n.2 (D.D.C. 2006).

### b.   By Agent

     An agent familiar with the process used to obtain the emails,

text communications, and other records obtained from the seized

computers will assist in authenticating these records in this case.

For example, a case agent will testify about the process used to

obtain the computer records from the seized computers.  See, e.g.,

United States v. Whitaker, 127 F.3d 595, 601 (7th Cir. 1997) (in

conspiracy to distribute marijuana case, a computer seized from one

defendant's residence contained computer records of drug transactions

and the drug business; rejecting argument that government was

required to supply a witness with personal knowledge of the computer

system; agent testimony authenticated the computer printouts under

Rule 901(a) including that the computer was seized during the

execution of a warrant, the agent was present when the computer

records "were retrieved from the computer using the Microsoft Money

program," and the agent "testified concerning his personal knowledge

and his personal participation in obtaining the printouts").

1

*c.   By Distinctive Characteristics*

2      Under Fed. R. Evid. 901(b)(4), authentication may be made by

3 distinctive characteristics, which may include "[a]ppearance,

4 contents, substance, internal patterns, or other distinctive

5 characteristics, taken in conjunction with circumstances."  Courts

6 have relied upon this rule in admitting e-mail and chat

7 communications bearing distinctive characteristics.  For example,

8 this may include the email addresses used in the communications, the

9 context and circumstances, and other surrounding circumstances.

10 See, e.g., United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir.

11 2000) (in fraud, false statements, and obstruction case, e mail

12 authenticated by contents and context, including e mail address,

13 automatic reply to sender, the messages indicated knowledge of

14 matter, and use of nicknames; and foreign deposition testimony

15 concerning phone conversations after e mail messages were

16 transmitted, applying Rule 901(b)(4)), cert. denied, 533 U.S. 940

17 (2001); United States v. Safavian, 435 F.Supp.2d 36, 40 (D.D.C. 2006)

18 (e-mails between defendant government official and lobbyist were

19 authenticated by distinctive characteristics under Rule

20 901(b)(4)including the e-mail addresses used which bore the sender's

21 and recipient's names; "the name of the sender or recipient in the

22 bodies of the e mail, in the signature blocks at the end of the e

23 mail, in the 'To:' and 'From:' headings, and by signature of the

24 sender"; and the contents).

25      **D.   Demonstratives**

26      The government may use charts, graphics, and other visual aids

27 to help the jury understand the evidence relating to defendant's

28 complex financial and business transactions.  The government is also

considering other potential demonstratives that might facilitate the presentation of its evidence.

Demonstrative aids may be used in the trial judge's discretion with a limiting instruction that they are not evidence, but are used for the purpose of aiding the jury in its examination of the evidence. United States v. Wright, 412 F. App'x 993, 993 (9th Cir. 2011) (holding no error in use of demonstrative aid by government).

**E.   Summaries**

The government has provided notice of intend to offer summaries of voluminous records under Federal Rule of Evidence 1006. These records summarize, among others, financial records, timelines, communications records, Company A battery records, casino records, business records, and cell-site analysis records. The government has provided defendant notice, as well as the underlying records. Defendant has not objected to the summaries.

Charts that summarize documents or testimony, already admitted into evidence, may be admissible under Rule 611(a) of the Federal Rules of Evidence, as demonstrative evidence, as opposed to Rule 1006, as substantive evidence. United States v. Blackwell, 954 F. Supp. 944, 971 (D.N.J. 1997). In this case, physical items from 11 Mareblu and defendant's residence, chemical swabbing from several locations, and chemical samples from defendant's residence were subjected to testing and evaluation at the FBI laboratory. For chain of custody purposes, evidentiary items were initially assigned three different numbers: (1) an Evidence Response Team number ("ERT#") at the site of collection for identifying where the items were found, (2) an FBI 1B number ("1B#") when booked into FBI evidence, and (3) an FBI laboratory number ("Lab #") at the laboratory. For

24

clarity, the government intends to offer summaries of the evidentiary items, numbering systems, and findings to ensure that the jury can follow where the items were found and assign the proper results to the appropriate item.

The scope of cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  This Court has broad authority to control the extent of cross examination, and "in its discretion may limit cross-examination in order to preclude repetitive questions, upon determining that a particular subject has been exhausted, or to avoid extensive and time-wasting exploration of collateral matters."  United States v. Weiner, 578 F.2d 757, 766 (9th Cir. 1978); see also Price v. Kramer, 200 F.3d 1237, 1252 (9th Cir. 2000) (upholding court's refusal to allow additional questioning where "defense counsel had already asked that question and received the same answer a number of times").

## F.    Impeaching Witnesses

Federal Rule of Evidence 608(a) permits attacks on a witness's credibility through testimony about the witness's general character or reputation for truthfulness or untruthfulness.  Fed. R. Evid. 608(a).  However, extrinsic evidence (including testimony from third-party witnesses) about the witness's specific instances of conduct for the purpose of attacking the witness's character for truthfulness or untruthfulness is prohibited, except in the case of prior convictions.  Fed. R. Evid. 608(b).  Counsel may only probe specific instances of conduct probative of a witness's character for truthfulness or untruthfulness during cross-examination (without proffering extrinsic evidence) with respect to (1) the testifying witness or (2) other witnesses about whose character the witness has

25

1 testified about.  Id.  Thus, counsel may not offer testimony or any

2 other extrinsic evidence about specific instances of conduct for the

3 purpose of attacking a testifying witness's credibility.

4     **G.    Cross-Examination of Defendant**

5     A defendant who testifies at trial may be cross-examined as to

6 all matters reasonably related to the issues he puts in dispute

7 during direct examination.  "A defendant has no right to avoid cross-

8 examination on matters which call into question his claim of

9 innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54

10 (9th Cir. 1981).

11     Defendant's credibility will be crucial if he chooses to testify

12 in order to refute the government's showing of knowledge and intent.

13 Indeed, because defendant is the only witness with "direct" evidence

14 of his own knowledge and intent, if he takes the stand to deny

15 knowledge of the laws prohibiting his charged conduct or to deny his

16 mental state in violating those laws, his credibility becomes a key

17 issue.  Cross-examination of defendant about other fraudulent conduct

18 in which he has engaged or false statements that he has made will,

19 therefore, be necessary for the jury to weigh whether defendant's

20 denial of knowledge and intent is credible given his other actions.

21 As the Ninth Circuit has held, Federal Rule of Evidence 608(b)

22 expressly permits questioning into prior behavior to challenge

23 credibility because "[e]vidence of prior frauds is considered

24 probative of the witness's character for truthfulness or

25 untruthfulness."  United States v. Gay, 967 F.2d 322, 328 (9th Cir.

26 1992).

27     Rule 608(b) has generally been interpreted to prohibit the

28 admission of extrinsic evidence to prove prior misconduct not

1  resulting in a conviction.  <u>Jackson</u>, 882 at 1448.  However, should

2  defendant falsely testify on cross-examination that he did not make

3  the statements indicated by the evidence, the government would be

4  permitted to impeach him with evidence of his prior inconsistent

5  statements pursuant to Rule 613.  <u>Id.</u>

6        The prejudicial effect of such evidence, if any, can be

7  addressed by a limiting instruction.  The admission of evidence

8  harmful to the defendant's case does not necessarily constitute

9  unfair prejudice.  <u>United States v. Fagan</u>, 996 F.2d 1009, 1015 (9th

10 Cir. 1993).  Unfair prejudice results from evidence that "provokes an

11 emotional response in the jury or otherwise tends to affect adversely

12 the jury's attitude toward the defendant wholly apart from its

13 judgment as to his guilt or innocence of the crime charged."  <u>Id.</u>

14 (internal quotation marks omitted).

15       **H.   Character Evidence**

16       The Supreme Court has recognized that character evidence --

17 particularly cumulative character evidence -- has weak probative

18 value and great potential to confuse the issues and prejudice the

19 jury.  <u>Michelson v. United States</u>, 335 U.S. 469, 480, 486 (1948).

20 Trial courts thus have wide discretion to limit the presentation of

21 character evidence.  <u>Id.</u> at 480.

22       Rule 404(a) permits a defendant to introduce evidence only of a

23 "pertinent" trait of character.  A non-pertinent or misleading

24 character trait is not admissible.  For instance, evidence of

25 defendant's family status is irrelevant to whether defendant is

26 believable and law-abiding, and is thus inadmissible.  <u>See</u> <u>United</u>

27 <u>States v. Santana-Camacho</u>, 931 F.2d 966, 967-68 (1st Cir. 1991)

28 (testimony of defendant's daughter purportedly showing that defendant

was a good family man was inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime of illegally bringing aliens into the United States).

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion.  See Fed. R. Evid. 405(a).  Thus, a defendant may not introduce specific instances of his good conduct through the testimony of others.  See Michelson, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  See Michelson, 335 U.S. at 482.  The only prerequisite is that there must be a good-faith basis that the incidents inquired about are relevant to the character trait at issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

Should defendant offer evidence of a "pertinent" trait during this trial, the government is permitted to offer evidence, including rebuttal witnesses, to rebut it pursuant to Rule 404(a)(2)(A).  See United States v. Giese, 597 F.2d 1170, 1190 (9th Cir. 1979).

28

I.   **Defendant's Testimony Regarding Character/Impeachment by Contradiction**

Unlike character witnesses, who must restrict their testimony to opinion or appraisal of a defendant's reputation, a defendant-witness may cite specific instances of conduct as proof that he possessed a relevant character trait. <u>Giese</u>, 597 F.2d at 1190.  However, "[o]nce a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." <u>Id.</u> at 1190 (citation omitted).  Thus, if defendant testifies to specific instances of conduct supportive of good character, he opens the door to extrinsic rebuttal evidence on all reasonably related matters, be they "collateral" or not. <u>Giese</u>, 597 F.2d at 1190.

The distinction between the proper use of extrinsic evidence to impeach by contradiction under Rule 607 and the impermissible use of extrinsic evidence under Rule 608 was explained by the Ninth Circuit in <u>United States v. Castillo</u>, 181 F.3d 1129 (9th Cir. 1999).  As the <u>Castillo</u> Court noted, Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness's credibility in terms of his general veracity. <u>Id.</u> at 1132.  However, the government may, under Rule 607, introduce extrinsic evidence that contradicts a defendant's specific testimony to demonstrate that such testimony is false. <u>Id.</u> at 1133-34.  Therefore, should the defendant, or any other witness, testify during this trial concerning defendant's good character, or any other relevant fact, that the government can contradict through evidence, including extrinsic evidence, the court

29

may properly admit such evidence.  See id. (district court's decision to admit extrinsic evidence of defendant's prior cocaine arrest, in the form of a government rebuttal witness, to refute defendant's testimony that he was a model citizen who stayed away from drugs was proper).

### J.   Lay Opinion Testimony

Witnesses may testify about defendant's (or others') statements and demeanor, including their opinions and impressions of his statements and demeanor.  Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation marks omitted).  Under Ninth Circuit law, opinion testimony by law enforcement officers is admissible and not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995).  As the Ninth Circuit has explained, law enforcement officers' opinion testimony:

> is a means of conveying to the jury what the witness has seen or heard . . . .  Because it is sometimes difficult to describe the mental or physical condition of a person, his character or reputation, the emotions manifest by his acts; speed of a moving object or other things that arise in a day to day observation of lay witnesses; things that are of common occurrence and observation, such as size, heights, odors, flavors, color, heat, and so on; witnesses may relate their opinions or conclusions of what they observed.

United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982); see also United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n investigator who has accumulated months or even years of experience

30

with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury."). The witnesses' opinion testimony and conclusions will be helpful to the jury and their opinions do not require expert knowledge.

Further, the government expects to have a burn surgeon authenticate photographs of the surviving victims and testify as her observations of their injuries. Federal Rule of Evidence 701 allows a lay witness to testify in the form of opinion if the opinion is (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701.

Courts have routinely admitted the testimony of treating physicians as lay, rather than expert, opinions. United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (stating a diagnosis of the injury made by the surgeon and treating physician who had examined the victim would be permissible lay testimony, but any hypothesis about the cause of injury would be an improper expert opinion); United States v. Steele, No. 2:10-CR-148-BLW, 2011 WL 841386, at *1 (D. Idaho Mar. 4, 2011) (unpublished opinion) ("Treating physicians may obviously testify concerning the diagnosis made, the course of treatment provided, the prognosis anticipated, and the consequences of treatment likely to be encountered. However, they do so, not as expert witnesses, but as fact witnesses who are describing the nature and course of treatment actually provided to the Defendant. Thus, the Defendant's treating physicians may testify

1   as fact witnesses, including opinions actually formed during the

2   course of treatment, so long as the testimony otherwise complies with

3   the Federal Rules of Evidence." United States v. Frantz, No. CR 02-

4   01267(A)-MMM, 2004 WL 5642909, at *12 (C.D. Cal. Apr. 23, 2004)

5   (unpublished opinion); see also Brandon v. Village of Maywood, 179 F.

6   Supp. 2d 847, 859-60 (N.D. Ill. 2001) (concluding that testimony by a

7   diagnosing doctor that a patient had gunshot wounds with a prickling

8   sensation and associated leg buckling was "a diagnosis that any lay

9   person could make based on Mr. Brandon's statements," that it did not

10  required "specialized or 'expert' knowledge," and thus that it was

11  "not subject to Rule 702").

12      **K.   Discretion as to Order of Proof**

13      The order of proof is a matter committed to the discretion of

14  the district court, which may conditionally introduce evidence or

15  otherwise permit deviations from the natural order of a case.  See,

16  e.g., United States v. Zemek, 634 F.2d 1159, 1169 (9th Cir. 1980);

17  see also United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981)

18  (court may admit co-conspirator statement subject to motion to strike

19  if foundation for admissibility not laid, so long as the motion to

20  strike would cure any defect); United States v. Turner, 528 F.2d 143,

21  162 (9th Cir. 1975) ("The trial judge has wide discretion in

22  supervising the order of proof in a conspiracy case."); United States

23  v. Avendano, 455 F.2d 975, 975 (9th Cir. 1972) (calling witnesses

24  out-of-order).

25      Several government witnesses will travel from outside the

26  Central District.  It is possible that witness travel may be

27  interrupted due to the ongoing COVID-19 pandemic.  The government

28  requests that, if necessary, their schedules be accommodated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**L.    Stipulations of Fact**

The parties are in the process of negotiating stipulations relating to the authenticity of evidence collected in this case.

**M.    Defendant Should Be Precluded from Affirmatively Entering Any Evidence Not Produced in Discovery**

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on defendants a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

As of the filing of this brief, the government has not received any reciprocal discovery from defendant.  To the extent defendant may attempt to introduce or use any evidence at trial that he has not produced to the government, such documents should be excluded pursuant to the Court's order.  See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

**N.    Affirmative Defenses**

Defendant has not given notice of any intent to rely on any defense of entrapment, mental incapacity, alibi, or any other

1    affirmative defense, despite the government's prior requests for such

2    notice.  See Fed. R. Crim. P. 12.1, 12.2.  Therefore, to the extent

3    defendant attempts to rely on any such defenses, the government

4    reserves the right to object and to move to preclude the defendant

5    from asserting such defenses.

6          **O.   Identification of Defense Witnesses**

7          Defendant also has not yet provided the government with any

8    information regarding witnesses that defendant intends to call, aside

9    from potential expert witnesses.  In order to eliminate the need for

10   the government to request a brief recess after the direct testimony

11   of any of the defense witnesses, the government requests that the

12   Court require defendant to provide any information necessary to

13   collect potential impeachment material, including the full name and

14   birthdate of any witnesses (for purposes of conducting a criminal

15   history inquiry) at the outset of the defense case.  The government

16   must be permitted to obtain criminal history information for those

17   witnesses and evaluate any impeachment material provided in order to

18   properly cross examine those witnesses, and the government does not

19   wish to delay the trial and waste the jurors' time by requesting a

20   recess following the direct testimony of each of those witnesses.

21         **P.   Jury Nullification**

22         A jury may "bring in a verdict in the teeth of both law and

23   facts."  Horning v. District of Columbia, 254 U.S. 135, 138 (1920),

24   not followed on other grounds, United States v. Gaudin, 515 U.S. 506,

25   520 (1995); United States v. Dougherty, 473 F.2d 1113, 1133 (D.C.

26   Cir. 1972).  Recognition of that power, however, does not countenance

27   admission of evidence or argument supporting jury nullification.  See

28   United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991).

1    A defendant is not entitled to present evidence or argument

2    solely to promote jury nullification. "[N]either a defendant nor his

3    attorney has a right to present to a jury evidence that is irrelevant

4    to a legal defense to, or an element of, the crime charged. Verdicts

5    must be based on the law and the evidence, not on jury nullification

6    as urged by either litigant." Zal v. Steppe, 968 F.2d 924, 930 (9th

7    Cir. 1992) (concurring opinion); see also United States v. Gorham,

8    523 F.2d 1088, 1097-98 (D.C. Cir. 1975). Unless specifically

9    authorized by statute, juries must reach their verdicts "without

10   regard to what sentence might be imposed." Rogers v. United States,

11   422 U.S. 35, 40 (1975). As a result, "it is improper to inform the

12   jury of the defendant's possible punishment." United States v.

13   Jones, 933 F.2d 807, 811 (10th Cir. 1991).

14   **V.    CONCLUSION**

15   The government respectfully requests permission to file

16   additional trial memoranda if necessary.