UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>STEPHEN WILLIAM BEAL,<br><br>        Defendant. | Case No. 8:19-CR-00047-JLS<br><br>ORDER DENYING MOTION FOR MISTRIAL |

This matter is before the Court on Defendant's oral motion for mistrial, made immediately after the jury retired to deliberate on July 19, 2023.  (*See* Doc. 999.)  The motion is based on Defendant's objection to the final statements of the prosecutor's rebuttal closing argument, which defense counsel contends was "*Weatherspoon* error."  Before the Court ruled on the matter, and on the same day as the motion was made, the jury returned a verdict of guilty on all counts.  (*Id.*)  The Court heard additional argument after the jury returned its verdict, and it took the matter under submission.  As set forth herein, the Court DENIES the motion for mistrial.

## I.    BACKGROUND

In the last five minutes of his thirty-minute rebuttal closing argument, the prosecutor, in rebuttal to the defense argument that the FBI pursued the case against

Defendant to the exclusion of other suspects, argued that Defendant was not "a victim in . . . law enforcement's rush to judgment." He then showed crime scene photos of the decedent victim, and a photo of the surviving victims in the hospital.[1]

In making the point that Defendant was the one who perpetrated the crime, the prosecutor stated, "[i]t's not just one fact, it's all of these facts," before again summarizing key portions of evidence against Defendant. Specifically, the prosecutor reminded the jury of evidence related to Defendant's access to the site of the explosion, his possession of objects and chemicals that were believed by experts and witnesses to have been part of the bomb, and his specialized knowledge that could have assisted him in making a bomb. Among the specific items of evidence discussed by the prosecutor were these points: Defendant had a key to the spa; in the days before the explosion, Defendant went to the spa for a ten-minute visit; nine days before the explosion, he bought a CVS 9-volt battery like the one whose fragments were found embedded in the subfloor above the seat of the blast—a battery believed by experts who investigated to have been part of the bomb; also in the days before the explosion, Defendant purchased a 12 x 6 x 6 box that was identified by a victim eyewitness to the blast as the same type of box the decedent victim had been opening when the explosion occurred; Defendant had a cache of explosive chemicals at his residence, including the same type of chemical oxidizer believed by experts to have been part of the bomb; Defendant possessed yellow wires of the same uncommon size and uncommon type as wire fragments found imbedded above the seat of the blast; and Defendant, through an instructional video posted online, demonstrated his knowledge of safely and effectively mixing the type of chemicals used to make explosive devices.

---

[1] In argument, defense counsel stated that the prosecutor showed these photos immediately after the objected-to statements. This is an incorrect account of the record; the photos were shown approximately five minutes before. Moreover, consistent with how these photos were published to the jury and viewed during the trial itself, these photos were shown to the jury for only a few seconds.

Thereafter, the prosecutor described the emotional impact of the bombing and the victim's death had on others, and contrasted that to evidence that "the defendant didn't shed a tear.  Instead, he took a shot of vodka."  Then the prosecutor stated:

> Members of the jury, you are in a unique position here.  You and only you have the power to dispense justice in this case.  The power and responsibility rests with you.  The FBI can't do it; the prosecution team can't do it; even Judge Staton can't do it.  You may not have the power in other cases even if you wish you did.  But you do in this case.
>
> Justice for Monica and Amy, justice for Ildiko's family, and justice for Ildiko.

Thereafter, the prosecutor stated that Defendant was the "only . . . person that could have done this."

Immediately after the prosecutor finished his rebuttal, the Court instructed the jury members that they must determine the case based only on the evidence admitted at trial, and that they should "not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence [them]."  (*See* Doc. 997, Jury Instructions at 35.) These instructions echoed those given at the end of the previous day, just prior to closing arguments.

After the jury retired for deliberations, defense counsel for the first time objected to the prosecutor's statement to the jury describing its "unique position" to "dispense justice" for the victims and family members, moving for a mistrial based upon what she referred to as *Weatherspoon* error, and arguing that the prosecutor's rebuttal was an improper appeal to the jury's passions.  The Government was ordered to file its written response by the end of the day.  Before that deadline, the jury returned its guilty verdict and, after the jury was excused, the Court heard argument in lieu of written briefing.

## II.   DISCUSSION

A motion for a mistrial may be made at any time while the trial is ongoing, including after the case is submitted to the jury.  Mistrials may be granted where "the ends of substantial justice cannot be attained without discontinuing the trial" on "reasons deemed compelling by the trial judge." *Gori v. United States*, 367 U.S. 364, 368 (1961); *see also* Fed. R. Crim. P. 26.3 (requiring courts to give notice and the opportunity to be heard before ordering a mistrial).

Here, the motion for a mistrial was not supported by a timely objection. Although the Court recognizes the awkwardness of making objections during and/or immediately after closing arguments, each side in fact made other objections during closing arguments, and the Court ruled on those objections.  Eight minutes passed between the prosecutor's statement and the time the bailiff was sworn in and the jury retired to the jury room.  After the alternates were excused, defense counsel finally stated that she intentionally did not raise a contemporaneous objection so as not "to highlight those specific statements about the jury being the only people who can provide justice to the victims."  But by waiting to give voice to this objection until after the Court gave the final instructions to the jury and until after the jury retired to deliberate, there was no chance for the Court to rule on the objection and/or give any specially tailored curative instruction or to otherwise shift the jury's focus.  *Cf. United States v. Weatherspoon*, 410 F.3d 1142, 1151 (2005) (analyzing the trial court's "curative statements").

Generally, where a timely objection to prosecutorial misconduct is made, the issue presented is analyzed under a harmless error standard on appeal, but if no objection is made, then the issue is analyzed under a plain error standard.  *United States v. de Cruz*, 82 F.3d 856, 861 (9th Cir. 1996) ("Prosecutorial comments to which defendant objects are reviewed for harmless error, while the standard of review for comments which defendant failed to interpose an objection is plain error.") (cleaned up).  The harmless error standard considers whether any improper prosecutorial

4

statements "considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly." *Id.* at 862. The plain error standard requires that an improper prosecutorial statement "improper conduct so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [the accused] of a fair trial." *Weatherspoon*, 410 F.3d at 1151 (cleaned up). The Court's conclusion here, as it was in *Weatherspoon* would be the same under either standard.[2]

Case law in the Ninth Circuit and elsewhere prohibit prosecutors both from improper "vouching" of witness testimony and from making emotional appeals to the jury. The former is not at issue here. At issue are the prosecutor's statements that the jurors should "dispense justice" for the victims, which the defense contends were improper. A successful challenge to statements made in closing argument by a prosecutor consists of two parts: There must be an improper statement by the prosecutor and there must be the potential for prejudice as a result of the improper statement. *See Weatherspoon*, 410 F.3d at 1151 (under plain error standard, requiring that the statement "taint[] the verdict and deprive[] [the accused] of a fair trial"); *de Cruz*, 82 F.3d at 861 (under the harmless error, requiring only that "the jury's ability to judge the evidence fairly" be "affected"). Here, the objected-to statements were not improper, yet, even if they were, the Court finds that the jury's ability to judge was not impaired by those statements.

The Court begins by analyzing the nature of the statements at issue. Prosecutors must refrain from "asking the jurors to step into the mindset of the victim[.]" *Michaels v. Davis*, 51 F.4th 904, 954 (9th Cir. 2022), *pet. for cert. filed _ U.S. _* (2023). They "may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking" or "point to a particular crisis in our society and ask the jury to make a statement with their

---

[2] In *Weatherspoon*, the Ninth Circuit found that reversal would be required even if it held the defendant to the higher plain error standard. Here, the Court concludes that a mistrial is not required even giving Defendant the benefit of the lower harmless error standard.

verdict." *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011) (cleaned up). Moreover, "it is improper to make 'statements designed to appeal to the passions, fears and vulnerabilities of the jury.'" *Id.* at 1257. "On the other hand, a prosecutor may ask the jury to act as a 'conscience of the community' unless such a request is specifically designed to inflame the jury." *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) (cleaned up).

Given the full context of the prosecutor's statements, the Court does not view them as improper. In a non-published (and therefore non-precedential) opinion, the Ninth Circuit indicated disapproval of similar remarks by a prosecutor who "asked that the jury convict the defendants to 'let justice come to the victims.'" *United States v. Williams*, 375 F. App'x 682, 685, 2010 WL 1417930 at *2 (9th Cir. 2010) (stating "we do not condone the argument used by the prosecutor in this case"). But in the *Williams* case, the "let justice come" remark was coupled with the prosecutor's improper vouching for a cooperating witness and the prosecutor's comparison of the case with an unrelated case in which a cooperating witness testified regarding the murder of a law enforcement officer. *Id.*

That is not the case here. Here, the objected-to statements were free of impermissible vouching and, as detailed herein, were preceded by the prosecutor's summation of the evidence, then followed by the Court's final instructions that repeatedly instructed jurors of the responsibility to base their decision on the evidence. In context, the prosecutor's point was that rather than Defendant being a victim of the FBI's *investigation* of the bombing (as defense counsel had argued by using the term "rush to judgment" to describe the investigation), there were other, actual victims of the actual bombing who were killed and/or seriously injured, and the evidence pointed to Defendant as the perpetrator. By summing up the evidence before asking the jury for justice for the decedent victim and the other victims, the prosecutor's statements were not inflammatory and they did not appeal to the emotions of the jurors. Instead, the statements here are similar to those made in *McLain v. Blacketter*: "The State met

its obligation in every respect to prove to you each and every material element of the charges. [The victim] has a right to justice, too." 2012 WL 3116186, at *11 (D. Or. July 27, 2012). There, the court observed that "[r]ead in context, the alleged appeals are not inflammatory or particularly emotion-laden." *Id.* Such is the case here as well.

In any event, even if the prosecutor's statements were found to be improper, the Court would still conclude that the jury's ability to judge the evidence fairly was not adversely affected. The concern addressed by the second step of the analysis is that, as a result of the objected-to statements, the jurors were distracted from the evidence admitted at trial by an amorphous admonition to "do justice" as viewed from the perspective of the victims or that they acted from emotion rather than reason. The Ninth Circuit has repeatedly observed that "[t]he evil lurking" in improper comments by prosecutors "is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence." *See, e.g., Weatherspoon*, 410 F.3d at 1149 (internal quotation marks omitted).

Challenges to a prosecutor's statement in closing argument must be examined in context of the case. *Michaels*, 51 F.4th at 954. Where the evidence against the accused "is particularly strong, the likelihood that prosecutorial misconduct will affect the defendant's substantial rights is lessened because the jury's deliberations are less apt to be influenced." *Weatherspoon*, 410 F.3d at 1151. In a weaker case, "the possibility of a prejudicial effect grows correspondingly." *Id.*

Here, the evidence against Defendant was particularly strong. Having presided over the trial, the Court is familiar with all the evidence admitted, and the Court discerns no danger that the jurors were in any manner distracted from the evidence against Defendant by the prosecutor's statements asking that they "dispense justice" for the victims.

The prosecutor's statements here are qualitatively and quantitatively different than those at issue in *Weatherspoon,* the case on which Defendant relies most

substantially.  In *Weatherspoon*, the Ninth Circuit vacated the defendant's conviction and remanded the case for a new trial based on "prosecutorial misconduct during the closing arguments."  410 F.3d at 1144.  There, the defendant was convicted of being a felon-in-possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *Id.*  Although evidence of this offense is often uncontroversial, in Weatherspoon's case, evidence of his possession was not particularly strong because possession could have been attributed to others.  *See id.* at 1145.

Defense counsel in *Weatherspoon* "argued that the prosecutor impermissibly urged the jury to convict in order to alleviate societal problems."  *Id.* at 1149.  For instance, the prosecutor told jurors that "[c]onvicting Mr. Weatherspoon is gonna make you comfortable knowing there's a not convicted felons on the street with loaded handguns, that there's not convicted felons carrying about semiautomatic[s]."  *Id.*  He reiterated that convicting the defendant would make the jurors feel "comfortable knowing there's a convicted felon that's been found guilty of possessing a loaded firearm with a fully loaded semiautomatic weapon."  *Id.*  The defense twice objected to the prosecutor's comments; the judge twice admonished the prosecutor to confine his closing argument to "guilt or not guilt."  *Id.*  When the prosecutor continued on the same theme despite the judge's admonitions,[3] the defense again objected to the prosecutor's similar comment that "finding this man guilty [will] protect other individuals in this community."  *Id.*  At this point, the judge overruled the defense objection and asked defense counsel to "let the Government complete its argument."  *Id.*  Based on the closing argument, the Ninth Circuit reversed the conviction and remanded the case for a new trial.  *Id.* at 1152.

Here, unlike in *Weatherspoon*, the prosecutor's statements to "dispense justice" were preceded with detailed references to the evidence and did not encourage the jurors to protect the community generally.  Specifically, the statements here focused

---

[3] It appears that this prosecutor was not easily deterred.  The Ninth Circuit also cited two other appellate cases in which the same prosecutor engaged in similar improper vouching, resulting in vacatur of two other convictions.  *See Weatherspoon*, 410 F.3d at 1148-49.

on the jurors' role as the judges of the facts, "a unique position," that allowed them to "dispense justice" in the case before them, rather than in any other case.  By limiting the described ability to "this case," the prosecutor's statements were more closely tied to the jury's role in deciding Defendant's guilt or innocence based on the admitted evidence.  To be sure, the prosecutor was arguing in favor of a guilty verdict, but the description of the jurors' "unique position" echoed the Court's own explanation to the jury panel during voir dire, that (1) our system of justice relies on jurors to determine the facts of the case, and that is something no one else—not the judge or the parties— can do; and, similarly, (2) jurors "wear the black robe" when it comes to determining the facts based on the evidence, while the judge "wears the black robe" as to the law. And the objected-to statements followed immediately on the heels of the prosecutor's summation of the evidence presented during the trial that pointed to Defendant's guilt, connecting him to the charged offenses as to motive, access to the site of the explosion, purchase of or possession of objects and chemicals used in the explosive device, and knowledge regarding mixing explosive chemicals and electrical circuitry. In this manner, the prosecutor's statements did not implicate the concern "that the defendant [would] be convicted for reasons wholly irrelevant to his own guilt or innocence." *Weatherspoon*, 410 F.3d at 1149 (internal quotation marks omitted).

Additionally, in contrast to *Weatherspoon*, where improper statements were repeated at least four times, the objected-to statements here were made only once. And relatedly, in *Weatherspoon*, the trial judge, after admonishing the prosecutor was at least twice to narrowly tailor his argument to guilt or innocence, permitted the prosecutor to continue his improper line of argument, and overruled the defendant's objection in a manner suggesting the objection was not only unmeritorious but was not even "a serious objection." 410 F.3d at 1149.  Indeed, the judge lent support to the prosecutor's improper statements by admonishing defense counsel to stop objecting and to "please let the Government complete its argument." *Id.*

Furthermore, here, the objected-to statements were sandwiched between the prosecutor's summation of the evidence as described above and the Court's final instructions given only moments later, the first of which told jurors not to "allow personal likes or dislikes, sympathy, prejudice, fear or public opinion to influence [them]." Instructions to the jurors that they must decide guilt or innocence based on the evidence introduced at trial and that oral argument is not evidence have the tendency to "dilute the potential prejudice arising from improper statements" by the prosecutor. *United States v. Koon*, 34 F.3d 1416, 1445 (9th Cir. 1994), *rev'd in part on other grounds*, 518 U.S. 81 (1996).

Therefore, the Court concludes that the prosecutor's statements did not adversely affect or impair the jury's ability to judge the evidence fairly, and Defendant suffered no prejudice as a result of those statements.

## III.   CONCLUSION

As set forth herein, the Court DENIES Defendant's motion for mistrial.

**IT IS SO ORDERED.**

**DATED:**  August 10, 2023

The Hon. Josephine L. Staton
United States District Judge