E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
ANNAMARTINE SALICK (Cal. Bar No. 309254)
SARAH E. GERDES (Cal. Bar. No. 306015)
SOLOMON KIM (Cal. Bar. No. 311466)
Assistant United States Attorneys
Terrorism and Export Crimes Section
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3899
        Email:     annamartine.salick2@usdoj.gov
                   mark.takla@usdoj.gov
                   sarah.gerdes@usdoj.gov
                   solomon.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>STEPHEN WILLIAM BEAL,<br><br>              Defendant. | No. SA CR 19-047-JLS<br><br>GOVERNMENT'S SENTENCING POSITION; EXHIBITS<br><br>Hearing Date: January 19, 2024<br>Hearing Time: 8:30 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Takla, Annamartine Salick, Sarah Gerdes, and Solomon Kim hereby files its Sentencing Position for defendant STEPHEN WILLIAM BEAL.

//

//

       This sentencing position is based upon the attached memorandum
of points and authorities, the Presentence Investigation Report, the
files and records in this case, and such further evidence and
argument as the Court may permit.

Dated: January 5, 2024          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                CAMERON L. SCHROEDER
                                Assistant United States Attorney
                                Chief, National Security Division

                                _____
                                MARK TAKLA
                                ANNAMARTINE SALICK
                                SARAH GERDES
                                SOLOMON KIM
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

ii

TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                        <u>PAGE</u>

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   CORRECTIONS AND ADDITIONS TO THE PRESENTENCE REPORT...........2

III.  BACKGROUND...................................................3

      A.    Ildiko Krajnyak........................................3

      B.    Defendant's Relationship with the Ildiko...............4

      C.    The Bombing............................................4

IV.   GUIDELINES CALCULATIONS......................................5

V.    VICTIM IMPACT AND RESTITUTION................................6

            1.    Ildiko and Her Family............................7

            2.    Victim #1 and Victim #2..........................8

            3.    Other Individuals in the Building................9

            4.    Commercial.......................................9

VI.   SENTENCING FACTORS...........................................9

VII.  ADDITIONAL SUPERVISED RELEASE CONDITIONS....................12

VIII. CONCLUSION .................................................12

**TABLE OF AUTHORITIES**

**STATUTES**                                                      Page(s)

18 U.S.C. § 844 .................................................. 1

18 U.S.C. § 924 .................................................. 1

18 U.S.C. § 1593 ................................................. 6

18 U.S.C. § 2332a ............................................. 1, 6

18 U.S.C. § 3553 ................................................. 9

18 U.S.C. § 3663 ................................................. 6

18 U.S.C. § 3664 ............................................ *passim*

18 U.S.C. § 3771 ................................................. 7

26 U.S.C. § 5861 ................................................. 1

**OTHER**

U.S.S.G. § 2A1.1 ............................................. 1, 6

U.S.S.G. § 2M6.1 ................................................. 6

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant STEPHEN WILLIAM BEAL's crimes are some of the most heinous seen in this district.  He faces sentencing for the bombing murder of his ex-girlfriend, Ildiko Kranjyak ("Ildiko").  The bomb dismembered Ildiko, blew pieces of her out a window, and caused her midsection, arms, and hands to disintegrate.  The bomb seriously wounded two others who miraculously survived, despite standing a few feet from Ildiko when the bomb exploded.  A jury convicted defendant of four counts: 18 U.S.C. § 2332a(a)(2) (Use of a Weapon of Mass Destruction Resulting in Death); 18 U.S.C. § 844(i) (Malicious Destruction of a Building Resulting in Death); 18 U.S.C. § 924(c) (Use of a Destructive Device During and in Relation to a Crime of Violence); and 26 U.S.C. § 5861(d) (Possession of an Unregistered Destructive Device).  The government recommends that the Court impose the maximum punishment for these offenses: a lifetime of imprisonment plus a mandatory consecutive sentence of thirty years of imprisonment, a supervised release term of five years, a special assessment of $400, and restitution.

The Presentence Investigation Report ("PSR") concluded that defendant's (1) base offense level is 43 based on U.S.S.G. § 2A1.1 (First Degree Murder); and (2) criminal history category is I.  The guideline range is a lifetime of imprisonment plus 30 years; a fine of $50,000 to $500,000, a 2-5 year term of supervised release, and a mandatory special assessment of $400.  (PSR, at 3; Recommendation Letter, at 1-2.)  The government agrees with the Probation Office's guideline calculations, recommended sentence, and recommendation regarding restitution.  For the reasons outlined below, a lifetime of

imprisonment is the only appropriate sentence for defendant's horrific offenses.

As the government has not received all restitution information at the time of this filing, the government requests a deferred restitution hearing set 90 days from sentencing pursuant to 18 U.S.C. § 3664(d)(5).

## II.   CORRECTIONS AND ADDITIONS TO THE PRESENTENCE REPORT

Paragraph 9 – The PSR incorrectly states that defendant and Ildiko dated for 18 months, as they met on June 24, 2016 and had known each other for approximately 23 months prior to the murder. (TEx.[1] 1200A, at 1.)

Paragraph 10 – Defendant threatened to kill himself after Ildiko told him she needed "space . . . [f]or a long time."  (TEx. 1200C, at 32.)  Defendant found out that Ildiko was seeing two men during the couple's March 2018 trip to Portugal.  (Defendant's Interview, TEx. 1497; TEx. 1186A.)  During the trip, defendant took pictures of Ildiko's text messages with one of the other men.  (TEx. 1186A.)

Paragraph 13 – The government recommends removing the language "and ignoring I.K's pleas to leave her alone."

Paragraph 15 – The government recommends removing the date.  The government cannot say for certain when defendant left the box for Ildiko.

Paragraph 62 – Defendant purchased two containers of lead tetroxide approximately 6 months prior to his wife's fall down the

---

[1] "TEx." Refers to the Government's Trial Exhibits.  Exhibits designated by "Ex." and a letter are exhibits to this filing.  The government did not include all cited to trial exhibits in this filing.  The government can provide them if requested.

2

staircase and toxicology report showing elevated levels of lead in her system.  (TEx. 781A; Ex. C.)

Paragraph 66, Recommendation Letter, at 4 – Defendant met Valerie Stone in person for the first time on April 21, 2018, which was approximately three weeks prior to the bombing and approximately two weeks prior to purchasing the battery and box.  (TEx. 1524.)

Recommendation Letter, at 5 – From 2019 through 2022, Valerie Stone received approximately $160,000 in defendant's fraudulent disability payments.  (TEx. 832; Ex. E.)

**III.  BACKGROUND**

The following information is from the PSR or the exhibits and testimony presented at trial.

**A.    Ildiko Krajnyak**

Ildiko was the American dream.  She immigrated to the United States from Hungary to make a better life for herself.  [Testimony of Eva Boni, 6/21/2022 RT 793; Ex. A.]

 

She worked hard.  She established her own successful business providing esthetician services to those in Orange County.  She had a family who loved her.  She had clients who loved her.  And at the

time of her murder, she was taking care of her mother who had dementia. [Testimony of Ronilo Vestil, 7/05/2022 RT 2249.]

**B. Defendant's Relationship with the Ildiko**

Defendant met Ildiko on a dating application in June 2016, and began dating exclusively. (Exhibit 1200A, at 1.) Their relationship was emotional. (PSR ¶¶ 10-12.)

Three months prior to the bombing, defendant threatened to kill himself after Ildiko told him she needed space. (TEx. 1200C, at 32.)

The following month, defendant took Ildiko on a trip to Portugal, where he spent almost $10,000, including the purchase of a $5,000 Louis Vuitton purse. (TEx. 828.) During the trip to Portugal, defendant learned that Ildiko was also dating two other men. (Defendant's Interview, TEx. 1497; TEx. 1186A.) He learned that Ildiko would be seeing one of the men during her Hungary trip scheduled for May 2018. (TEx. 1186A.)

In April 2018, defendant attempted to win her back and took Ildiko on a $3,000 trip to Puerto Vallarta, Mexico. (TEx. 829.) During this trip Ildiko told a friend that she was no longer interested in defendant romantically. (TEx. 1567.)

In the month prior to the bombing, defendant repeatedly attempted to see Ildiko, but Ildiko turned him down. (TEx. 1200C.)

**C. The Bombing**

At some point, defendant formulated a plan to kill Ildiko while she was on a trip to Hungary. Defendant had a specialized expertise in making fireworks and building high-powered rockets which he had honed over many years. (PSR ¶ 18.) Defendant was an expert in mixing explosive chemicals and building electrical fusing systems, and used these skills to murder her. (Id.)

4

1    Defendant had over 130 pounds of explosive precursor chemicals
2    in his house.  (PSR ¶ 17.)  He also had wires and electric matches to
3    build an electrical fusing system.  (Id.)
4    Defendant built a bomb, placed it in a carboard box, and left it
5    at Ildiko's spa.  (PSR ¶ 15.)  Seven days prior to the bombing,
6    defendant purchase three 12"x6"x6" boxes.  (PSR ¶ 20.)  Six days
7    prior to the bombing, he purchased a Company A 9-volt battery in
8    cash.  (Id.)  On multiple occasions prior to the bombing, security
9    footage and cellular site analysis placed defendant at Ildiko's spa,
10   the bomb site.  (PSR ¶ 4.)  He also had a key to the spa and could
11   come and go as he pleased.  (Id.)
12   On May 15, 2018 at approximately 1:05 p.m., Ildiko picked up a
13   12"x6"x6" box, placed it on her desk, and began to open it.  (PSR
14   ¶ 16.)  The bomb exploded instantly killing her, dismembering her
15   body, throwing her leg and torso through a window, and disintegrating
16   her midsection, arms, and hands.  (Id.)  Two of Ildiko's clients were
17   severely injured.  (Id.)  The building and surrounding area,
18   including a preschool across from the spa were evacuated.  (Ex. I.)
19   The FBI found bomb fragments - yellow wire and Company A 9-volt
20   battery cells - in the ceiling above Ildiko's desk.  (PSR ¶ 19.)  The
21   oxidizer used in the bomb matched explosive chemicals found in
22   defendant's house.  The battery, box, wires, and oxidizer connected
23   the bomb directly to defendant.  (PSR ¶¶ 18-19.)

24   **IV.   GUIDELINES CALCULATIONS**

25   The government concurs with the USPO's guideline calculations
26   and criminal history category.
27   The government agrees that Counts 1-2 and 4 are grouped for
28   guideline calculations as they involve the same victim connected by

1   the same objective and common scheme.  (PSR ¶ 31.)  Count 3 is not

2   grouped with the other counts as the statute mandates a consecutive

3   mandatory sentence.  (PSR ¶ 32.)

4       The guideline for Count 1 - a violation of 18 U.S.C.

5   § 2332a(a)(2) (Use of a Weapon of Mass Destruction Resulting in

6   Death) - is U.S.S.G. § 2M6.1.  (PSR ¶ 33.)  If the defendant caused

7   intentional or knowing death, the cross-referenced guideline of

8   U.S.S.G. § 2A1.1 applies.  U.S.S.G. § 2M6.1(c)(1).  In this case,

9   defendant built and planted a bomb for the victim to open in her

10  business.  There is no question that defendant intended to cause

11  Ildiko's death.

12    Base Offense Level

13    (First Degree Murder with death):   43         U.S.S.G. § 2A1.1

14  (PSR, at 4; Recommendation Letter, at 1-2.)  Defendant has one

15  criminal history point resulting from his guilty pleas to fraud

16  offenses on November 9, 2023 and is in criminal history category I.

17  Defendant's guidelines range is a lifetime of imprisonment, a

18  supervised release term of 2-5 years (Counts 1 to 3), a fine of

19  $50,000 to $500,000, and a special assessment of $400.  In addition,

20  due to his conviction under Count 3, the Court must impose a 30-year

21  term of imprisonment consecutive to the initial term of imprisonment

22  imposed.

23  **V.   VICTIM IMPACT AND RESTITUTION**

24      The government identified over 30 victims under 18 U.S.C.

25  §§ 1593, 3663, and 3663A in this case: (1) the decedent, Ildiko, and

26  her family members; (2) the injured survivors who were in the spa

27  when the bomb exploded, referred here as Victim #1 and Victim #2; (3)

28  everyone who was in or near 11 Mareblu at 1:05 p.m. on May 15, 2018

6

when the bomb exploded; and (4) commercial harm to 11 Mareblu's owner and insurer.  At this time, three crime victims have requested the ability to speak at the sentencing hearing pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(4).  At this time, the government estimates a total of ten minutes for these three victims, but that may increase if additional crime victims wish to address the Court.

The government has been diligent in attempting to collect victim impact statements and identify restitution amounts, however the number of victims has slowed the process.  As the government was not able to include all such information in this filing, the government requests a deferred restitution hearing set 90 days from sentencing pursuant to 18 U.S.C. § 3664(d)(5).

### 1.  Ildiko and Her Family

Ildiko died in the prime of her life at the age of 48. Defendant's crimes left a son without a mother and other family members without their loved one.  Ildiko's family must also live with the ghastly way defendant took her life.

Ildiko's husband stated that defendant's crimes took his family away from him and that guilt keeps him from allowing himself full joy and happiness.  (Underseal Ex. AA.)

Ildiko was also described as:

- "Totally passionate, outgoing . . . Really big heart . . . wears her heart on the sleeve" by Beth Baumhardt. [6/21/2022 RT 745.]

- "Independent, happy, very hard worker" who made her own money early and didn't depend on her parents by Eva Boni. [6/21/2022 RT 793.]

- "She was beautiful . . . kind, caring, supportive. Just a really amazing . . . good person" by Jett Martin. [6/22/2022 RT 346.]

Ildiko's family requests that the Court impose a lifetime of imprisonment.

### 2.   Victim #1 and Victim #2

Victim #1 and her mother, Victim #2, were in the day spa when the bomb went off.  They had just finished receiving facials as a special treat for a wedding they were attending that weekend.  As Victim #1 recounted during her trial testimony, she pulled her mother close to her after their facials and stated "we look so cute." [6/22/2022 RT 15.]

Seconds later, both of their lives changed forever.  [6/22/2022 RT 17.]  The government is not going to rehash their harrowing escape from the bomb site as Victim #1 has testified to her experience in two trials.  Victim #1 described the haunting vision of Ildiko opening the box as the first thing she sees when she wakes up in the morning and that last thing she sees before she goes to bed. [6/22/2022 RT 16.]

Victim #1 was hospitalized in the intensive care unit for two weeks with second and third degree burns and shrapnel injuries. Victim #2 was also hospitalized with second and third degree burns and lost one eye due to bomb shrapnel.  (PSR ¶ 26.)  Their treating physician, Dr. Andrea Dunkelman testified about the treatment for such injuries which included scraping the burned and dead skin from their bodies.  [6/22/2022 RT 743-764, Underseal Ex. BB.]  A picture of this process is at Underseal CC.  There is no question that these injuries caused both excruciating pain and suffering.

Victim #1 also stated that she was having a difficult time with opening packages after the bombing.  [Testimony of Ashley Mericle, 7/27/2022 RT 5050.]

### 3.   Other Individuals in the Building

Other individuals in or near the building were also harmed:

Victim #3 reported that she has a fear of opening packages to this day, suffers post-traumatic stress disorder, and felt anxiety and emotional stress due to the loss of her income.  (Underseal Ex. DD.)

Victim #4 reported that she suffered from swelling and rashes due to debris from the ceiling after the bomb went off and that she feared opening packages and mail.  (Underseal Ex. EE.)

Victim #5 reported that defendant's crimes caused her a great deal of pain, fear, and loss, and suffered a substantial financial hardship.  (Underseal Ex. FF.)

Victim #6 reported she suffered from post-traumatic stress disorder, that she was unable to do the things she enjoyed, and that she will never have a sense of safety in her workplace again. (Underseal Ex. GG.)

### 4.   Commercial

The company that insured 11 Mareblu lost $2.1 million in insurance payments due to defendant's crimes.  (Ex. J.)

## VI.   SENTENCING FACTORS

In determining the appropriate sentence, the Court must consider the factors under 18 U.S.C. § 3553(a).

First, the Court must consider the nature and circumstances of the offense.  Defendant's crimes are particularly gruesome and chilling.  Tragically, defendant targeted one woman, his ex-

girlfriend.  Her life ended when she opened a box.  Diabolically, defendant also caused catastrophic physical and emotional damages to countless others with absolutely no connection to him, and who had the misfortune of being in the room or near the room when the bomb went off.  Defendant knowingly chose a method of murder that would guarantee immense and immeasurable collateral damage.  He did not care when the bomb would go off and who would be around.  This bomb went off at lunchtime in a busy commercial office building on a weekday.  The fact that only one person died and only two others were hospitalized is pure luck and nothing less than a miracle.  This act could have easily caused additional injuries and deaths.  Had defendant's chemistry been off, he could have leveled the entire building or even the block.  Defendant's callousness, depravity, and complete disregard for human life was sociopathic.  The nature and circumstances of the offenses warrant the maximum punishment under the law.

Next, the Court must consider the history and characteristics of the defendant.  Defendant has engaged in criminal conduct for many years and while in pretrial custody on the bombing offenses.  He committed disability insurance fraud, bankruptcy fraud, and Social Security fraud, unjustly enriching himself of almost $1.5 million in totality over a decade.  The government also notes the highly suspicious circumstances of his prior wife's death: (1) the taking out of an accidental death policy six weeks before she fell down a staircase in his presence; (2) defendant's failure to tell investigators that he was present for the fall; (3) his purchase of lead tetroxide approximately six months prior to toxicology reports showing she had elevated levels of lead in her system; (4)

defendant's claim that the lead poisoning was caused by a prior owner making fishing lures in the house; and (5) defendant's failure to cooperate with the doctor treating her in the hospital.  (PSR ¶¶ 61-62.)  Defendant gave his girlfriend $160,000 of fraudulent disability money, yet also provided an affidavit to this Court claiming to be indigent.  Defendant appears to have been emboldened by his history of criminal conduct.  Defendant's history and characteristics warrant a severe sentence.

Third, a lifetime of imprisonment is the only sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.  Ildiko's family will never see her again.  Defendant's crime has left a grieving son, grieving widower, grieving brother, and grieving friends.  Victim #1, Victim #2, and others have to live with life-altering physical and emotional injuries, including post-traumatic stress disorder, anxiety, and a lack of feeling safe.  Indeed, a sentence any less than a lifetime of imprisonment plus 30 years of incarceration for a murder of this nature risks undermining respect for the law and inadequately reflecting the seriousness of the offense.

Fourth, a lifetime of imprisonment will protect the public from further crimes of defendant.  Defendant was raised in a middle-class household with loving parents.  He earned a college degree.  He had all the advantages in this world.  Despite these circumstances and his mature age, he engaged in at least a decade of criminal conduct anyway.  The public needs to be protected from him.

The recommended sentence also affords adequate deterrence to criminal conduct, and adequately protects the public from further crimes of this defendant.

## VII. ADDITIONAL SUPERVISED RELEASE CONDITIONS

While the government requests a lifetime of imprisonment, the government does not know what the Court will impose or whether defendant will actually serve the totality of the imposed sentence. The government proposes the following additional supervised release conditions:

1.    The defendant shall submit to his person and property – including any residence, premises, vehicle, container, papers, effects, and computers, cellular telephones, and other electronic communications or digital storage devices or media under his control – to search and seizure at any time of the day or night by any law enforcement officer or probation officer, with or without a warrant, probable cause, or reasonable suspicion.

2.    The defendant shall not possess, attempt to possess, have under the defendant's control, or have access to explosives, oxidizers, explosive fuels, explosive chemicals, pyrotechnic powders, gunpowder, smokeless powder, chemicals to make explosive powders, fireworks, electric matches, blasting caps, electric squibs, igniters, and fuses.

The government believes these proposed supervised release conditions are necessary in light of the nature and seriousness of defendant's offenses.

## VIII. CONCLUSION

For the foregoing reasons, the government recommends the Court sentence defendant to lifetime of imprisonment plus thirty years, a five-year period of supervised release, a mandatory special assessment of $400, and restitution.  This term consists of a lifetime of imprisonment on Counts 1 and 2 to be served concurrently,

12

10 years on Count 4 to be served concurrently to Counts 1 and 2, and
30 years on Count 3 to be served consecutively to Counts 1, 2, and 4.

1           DECLARATION OF MARK TAKLA

2      I, Mark Takla, declare as follows:

3      1.   I am the Assistant United States Attorney assigned to this

4  matter.  I have knowledge of the facts set forth herein and could and

5  would testify to those facts fully and truthfully if called and sworn

6  as a witness.

7      2.   Exhibit A is a true and correct copy of pictures of Ildiko

8  Kranjyak and her family.

9      3.   Exhibit C is a true and correct copy of business records

10  obtained from Skylighter, Inc.

11      4.   Exhibit H is a true and correct copy of text message Ildiko

12  Krajnyak exchanged with her friend.

13      5.   Exhibit I is a true and correct copy of a picture taken

14  immediately after the bombing on May 15, 2018.

15      6.   Exhibit J and Underseal Exhibits AA, DD through GG are true

16  and correct copies of victim impact statements.

17      7.   Underseal Exhibit BB is the trial testimony of Dr. Andrea

18  Dunkelman.

19      8.   Underseal Exhibit CC is a true and accurate copy of

20  pictures of the medical treatment of Victim #1 at the hospital after

21  the bombing.

22      I declare under penalty of perjury under the laws of the United

23  States of America that the foregoing is true and correct and that

24  this declaration is executed in Santa Ana, California, on January 5,

25  2026.

26                              _Mark Takla_

27                              _____
                                MARK TAKLA

28

                                14

EXHIBIT A

Fwd: [EXTERNAL EMAIL] - Ildiko's eulogy

Nicholas Vicencia <nsvicencia@fbi.gov>
Thu 1/4/2024 10:53 PM
To:Takla, Mark (USACAC) <mtakla@usa.doj.gov>

---

**From:** nilo <niloteknos@gmail.com>
**Sent:** Thursday, January 4, 2024 10:51:07 PM
**To:** Vicencia, Nicholas S. (LA) (FBI) <nsvicencia@fbi.gov>
**Subject:** [EXTERNAL EMAIL] - Ildiko's eulogy





*Mass of Remembrance*

### Ildiko Krajnyak

*June 8, 1969—May 15, 2018*

*26 May 2018*
*10:00 am*

*San Francisco Solano Catholic Church*
*Rancho Santa Margarita, CA*

**Ildiko Krajnyak**

Mother – Wife – Daughter – Sister – Friend



June 8, 1969 – May 15, 2018



What we have once enjoyed
and deeply loved
We can never lose,
For all that we love deeply
Becomes a part of us.

- Helen Keller



### Ildiko Krajnyak

Ildiko was born on June 8, 1969 in Miskolc, Hungary to Juliana and Laszlo Krajnyak. Soon after graduating from high school, she pursued studies and training in the field of cosmetology, specializing in skin care. Ildiko established her own private salon in her hometown before immigrating to the United States in 1992.

Ildiko was known as a very hard worker. She took on many different jobs until establishing herself in the beauty industry in the U.S. Ildiko worked for various international beauty product companies, including Yon-ka, Pevonia and most recently, Cinque Monde. She was an educator, trainer and marketer of their fine beauty products.

Ildiko, when not traveling for her employer, made time to treat clients in her private salon, Magyar Kozmetika. Ildiko was extremely passionate about her work and was devoted to her son, husband and mother. Those who were blessed to be one of Ildiko's clients all knew how proud she was of her son, Keanu.

Ildiko was an intelligent, loving and strong woman who never took no for an answer. Her beauty and grace along with her always positive attitude, charming personality and contagious smile left all those who knew her feeling loved.

She is survived by her son Keanu, her unconditionally loving husband, Nilo Vestil; her mother, Julianna Krajnyak; brother, Laszlo Krajnyak; cousin, Eva Boni; niece and nephew, Barbara and Marco Krajnyak.



*Gone from our sight,*
*but never from our memories.*
*Gone from our touch,*
*but never from out hearts.*





Exhibit 59

USA_518955   1 of 1

















ase 8:19-cr-00047-JLS   Document 1018   Filed 01/05/24   Page 29 of 50   Page ID #:234







USA_518969

Exhibit 62
1 of 1



Exhibit 63

USA_518979   4 of 1

EXHIBIT C

P.O. Box 480
Round Hill, VA  20142-0480
540/338-3877  540/338-0968 (Fax)

| Order #<br>57060A | COPY | | Invoice Date<br>08/20/07 | Page<br>1 |
|---|---|---|---|---|
| Bill To | | Ship To | | |
| Stephen Beal | | | | |

| Customer No.<br>11327 | Sales I.D.<br>HEG/LSK | Reference # | Source<br>CS /ISKY | Terms<br>XXXXXXXX6476 VISA | |
|---|---|---|---|---|---|
| Ordered By | | Warehouse | Phone Number<br>(714) 916-2965 | Total Wt.<br>0.0 Lbs | Zone | Pkg<br>0 | Ship Via<br>DS |

Thank you for your order. Your credit card charge will show up under
"Skylighter" on your monthly credit card statement. Out-of-stock
items in B/O column will be shipped as soon as they're back in stock.

| Qty | B/O | Ship | Item # | Description | Un. Price | Ds | Amount |
|---|---|---|---|---|---|---|---|
| 1 | 0 | 1 | CH5517 | Lead Tetraoxide* | 12.21 | -- | 12.21 |
| 1 | 0 | 1 | CH8112 | Ferro-Titanium, -40-325 mesh | 21.89 | -- | 21.89 |
| 1 | 0 | 1 | CH8180 | Magnesium Carbonate | 8.60 | -- | 8.60 |
| 1 | 0 | 1 | INSUR | Insurance on shipment 2% | 0.85 | -- | 0.85 |
| 1 | 0 | 1 | SURCHARGE | 5% Surcharge - Regulatory Compliance | 2.14 | -- | 2.14 |

MERCHANDISE INVOICE TOTAL $ 45.69
SHIPPING & HANDLING $ 13.22
INVOICE TOTAL $ 58.91
CR. CARD: VI, APPR:041553 $ -58.91

Exhibit 781A
22 of 31

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

P.O. Box 480
Round Hill, VA  20142-0480
540/338-3877  540/338-0968 (Fax)

| Order #<br>57411A | COPY | | Invoice Date<br>08/28/07 | Page<br>1 |
|---|---|---|---|---|

| Bill To | Ship To |
|---|---|
| Stephen Beal | |

| Customer No.<br>11327 | Sales I.D.<br>HEG/LSK | Reference # | | Source<br>CS /ISKY | Terms<br>XXXXXXXX6476 VISA | |
|---|---|---|---|---|---|---|
| Ordered By | | Warehouse | Phone Number<br>(714) 916-2965 | Total Wt.<br>0.0 Lbs | Zone | Pkg<br>0 | Ship Via<br>DS |

Thank you for your order. Your credit card charge will show up under
"Skylighter" on your monthly credit card statement. Out-of-stock
items in B/O column will be shipped as soon as they're back in stock.

| Qty | B/O | Ship | Item # | Description | Un. Price | Ds | Amount |
|---|---|---|---|---|---|---|---|
| 2 | 0 | 2 | CH5200 | Potassium Chlorate* | 7.75 | -- | 15.50 |
| 1 | 0 | 1 | CH5517 | Lead Tetraoxide* | 12.21 | -- | 12.21 |
| 5 | 0 | 5 | CH8068 | Charcoal, Air Float | 4.29 | 8 | 19.73 |
| 3 | 0 | 3 | CH8169 | Lactose | 7.65 | -- | 22.95 |
| 1 | 0 | 1 | CH8180 | Magnesium Carbonate | 8.60 | -- | 8.60 |
| 1 | 0 | 1 | INSUR | Insurance on shipment 2% | 1.58 | -- | 1.58 |
| 1 | 0 | 1 | SURCHARGE | 5% Surcharge - Regulatory Compliance | 3.95 | -- | 3.95 |

MERCHANDISE INVOICE TOTAL $ 84.52
SHIPPING & HANDLING $ 28.50
INVOICE TOTAL $ 113.02
CR. CARD: VI, APPR:038788 $ -113.02

Exhibit 781A
24 of 31

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SWB_00001113

EXHIBIT E

**Funds from Stephen Beal to Valerie Stone**
**Source of Funds:  Beal - Chase Account Ending 3350 and 5309**
Signers:  Stephen Beal; Valerie Stone - Added 3/27/2019
**Funds Received by Stone: Union Bank Acct Ending 7828, Wells Fargo Acct Ending 1976, US Bank REI**
**Mastercard Ending 6980 and Western National**
**Period:  April 1, 2018 - June 25, 2022**
**FoA:  Lorrie Hirsch**

| Deposits Received From Beal | Begin 4/1/2019 | 2020 | 2021 | 2022 | Grand Total |
|---|---|---|---|---|---|
| **Chase Ckg 984673350 - Beal** | **$26,129.84** | **$49,274.79** | **$53,001.85** | | **$128,406.48** |
| Union Acct Ending 7828 | $10,450.00 | $8,500.00 | | | $18,950.00 |
| US Bank Mastercard Acct Ending 6980 | $11,704.00 | $6,147.90 | | | $17,851.90 |
| Wells Fargo Acct Ending 1976 | | $7,970.00 | $7,270.00 | | $15,240.00 |
| Western National - Rent | | $20,391.77 | $32,172.73 | | $52,564.50 |
| Citi Costco Visa Ending 2376 - Stone | $3,975.84 | $6,265.12 | $13,559.12 | | $23,800.08 |
| **Stephen Beal - Chase Ending 5309** | | **$7,550.00** | **$250.00** | **$177.53** | **$7,977.53** |
| Union Acct Ending 7828 | | $6,000.00 | | | $6,000.00 |
| Wells Fargo Acct Ending 1976 | | $1,550.00 | $250.00 | | $1,800.00 |
| Cash - Valerie Stone | | | | $177.53 | $177.53 |
| **Grand Total** | **$26,129.84** | **$56,824.79** | **$53,251.85** | **$177.53** | **$136,384.01** |

| Items of Interest: | | |
|---|---|---|
| Funds Received from Beal: | $ | 136,384.01 |
| Potential Cash/ATM from Beal: (Orange Tab) | $ | 23,599.60 |
| | **$** | **159,983.61** |

Exhibit 832
1of 1
USA_529615

EXHIBIT H



Exhibit 1567
1 of 10

EXHIBIT I



Exhibit 107
1 of 1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT J

Anna Guan

Case No: 0973 8:19CR00047-001

Defendant: Stephen Beal

Our Claim Number: 3010826880

Our Insured: Jack R. Barnes

Hello,

Here is our information for restitution:

Building:  $1,755,535.33
Business Income: $337,628.45

Deductible paid by insured: $8,106.60

Total amount paid: $2,101,270.38

I have attached the documents that support what we have paid out.

Payment may be sent to:
PO Box 268992
Oklahoma City, OK 73126

Please reference claim number 3010826880 on all payments

Thank you,

Jennifer Sebby
Truck Insurance Exchange
616-977-5893



**FARMERS**
INSURANCE

Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994
Fax: (877) 217-1389

October 17, 2019

BARNES, JACK R.
28062 TEFIR
MISSION VIEJO CA 92692-1300
Delivered by email to: jrbsport@att.net

| RE: | Insured: | Barnes, Jack R. |
| --- | --- | --- |
| | Claim Unit Number: | 3010826880-1-3 |
| | Policy Number: | 0606617769 |
| | Loss Date: | 05/15/2018 |
| | Location of Loss: | 11 Mareblu, Aliso Viejo, CA |
| | Subject: | Important Claim Information |

Dear Mr. Barnes:

Thank you for choosing us to provide for your insurance needs.  We value you as a customer and appreciate the opportunity to be of service.

Enclosed, please find the updated loss of rents worksheet for the rental period through November 14, 2019. Please be advised that the loss of rents coverage is limited to 18 months or the actual period of restoration to put the property back to its pre-loss condition, whichever comes first.

A payment for the loss of rents is being sent to you electronically, please allow up to 48 hours for it to arrive in your account that you have on file with us. This will be the final loss of rents payment since we have reached the 18 month policy limit.


We encourage you to visit www.farmers.com to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers.

If you have any questions, please call me at (858) 342-6465.

Thank you.

Truck Insurance Exchange

Daniel Gil
Special Commercial Property General Adjuster
dan.gil@farmersinsurance.com
(858) 342-6465

HZV8RQ8F

CC: JAMES TUCKER
Enclosure(s):
   General Supporting Documents -



**FARMERS**
I N S U R A N C E

# LOSS OF RENTS WORKSHEET

### Truck Insurance Exchange

| Claim #: | 3010826880 |
|---|---|
| Insured  : | Barnes |
| Date of Loss: | 5/15/2018 |
| Policy #: | 60661-77-69 |
| Adjuster: | Daniel Gil |

| Description | Quantity | Rent | | Total | |
|---|---|---|---|---|---|
| 11 Mareblu, Aliso Viejo CA (May 18 - 31) 14 days @ $28,209.10  mo. | 1 | $ | 12,983.91 | $ | 12,983.91 |
| 11 Mareblu, Aliso Viejo CA (June 1 - August 31) @ $28,209.10  mo. | 3 | $ | 28,209.10 | $ | 84,627.30 |
| 11 Mareblu, Aliso Viejo CA (September 1 - November 30) @ 15,984.59 mo. | 3 | $ | 15,984.59 | $ | 47,953.77 |
| Extra Expense Rental Credit - Weekly Tenant Access Thru Suite 100 | 2 | $ | 500.00 | $ | 1,000.00 |
| 11 Mareblu, Aliso Viejo CA (December 1 - October 31) @ $16,652.25 mo. | 11 | $ | 16,652.25 | $ | 183,174.75 |
| Extra Expense Rental Credit - Sleep Study interuption | 1 | $ | 117.60 | | 117.60 |
| 11 Mareblu, Aliso Viejo CA (November 1 - 14) 14 days @ $16,652.25 mo. | 1 | $ | 7,771.12 | | 7,771.12 |
| | | | | $ | - |
| | | | | $ | - |
| **LIMIT OF INSURANCE IS ACTUAL LOSS SUSTAIN OR 18 MONTHS (11/14/19)** | | | | $ | - |
| | | | | $ | - |
| | | | | $ | - |
| | | Subtotal | | $ | 337,628.45 |
| | | Less prior payments | | $ | 12,739.58 |
| | | Less prior payments | | $ | 244.33 |
| | | Less prior payments | | $ | 28,209.10 |
| | | Less prior payments | | $ | 28,209.10 |
| | | Less prior payments | | $ | 28,209.10 |
| | | Less prior payments | | $ | 15,984.59 |
| | | Less prior payments | | $ | 15,984.59 |
| | | Less prior payments | | $ | 16,984.59 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,769.85 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | $ | 16,652.25 |
| | | Less prior payments | | | |
| | | Net amount due | | $ | 24,423.37 |



**FARMERS**
**INSURANCE**

Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994
Fax: (877) 217-1389

February 11, 2020

BARNES, JACK R.
28062 TEFIR
MISSION VIEJO CA 92692-1300
Delivered by email to: jrbsport@att.net

| | | |
|---|---|---|
| RE: | Insured: | Barnes, Jack R. |
| | Claim Unit Number: | 3010826880-1-1 |
| | Policy Number: | 0606617769 |
| | Loss Date: | 05/15/2018 |
| | Location of Loss: | 11 Mareblu, Aliso Viejo, CA |
| | Subject: | Settlement Notice |

Dear Mr. Barnes:

Thank you for choosing us to provide for your insurance needs.  We value you as a customer and appreciate the opportunity to be of service.  We deposited your claim payment to the account you registered while enrolling for direct deposit.  Funds are generally available within 48 hours.

As discussed, all or a portion of the Building Ordinance or Law - B&C Combined loss has exceeded the policy limit(s) of $78,000.  The excess loss amount beyond the available coverage limit is $1,893.40.  Be advised that this excess loss amount has been used to partially absorb your $10,000 deductible.  The deductible has been reduced to $8,106.60

A payment of $359,576.98 is being issued to you at this time.  This amount includes the following:

1. I have previously emailed you the estimate for Supplement #2 in the amount of $217,396.37 which includes the break down for the Building Ordinance (code improvement) repairs.

2. The final misc. repairs and cost items agreed to and itemized on the Statement of Loss totalling $46,573.70.

3, The recoverable depreciation amount of $95,606.91.

The attached Statement of Loss worksheet explains your settlement in more detail.

We intend to pursue reimbursement of amounts we paid, including your deductible, if applicable, from the responsible party who caused or contributed to this loss.  If we receive payment, we will reimburse your deductible, if one was applied, according to your state's law.

We wish to inform you there are time limits as found in the Conditions language of your policy. These limits may have been extended by statute in your state. The time period set forth in the Conditions section is the shortest period which may apply.

E.   **Property Loss Conditions**

\*\*\*

4.   **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a.   There has been full compliance with all of the terms of this insurance; and

b.   The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Please note, on occasion, policies are updated with newer editions. We encourage you to reference your policy and included endorsements for any updates.

It is our goal to provide our customers with the best possible service. If you have any questions about the claim, please do not hesitate to contact me directly at my primary phone number (858) 342-6465. Although not my main office number, in case of immediate need an alternative number for our claims office is (866) 850-6372.

Thank you.

Truck Insurance Exchange

Daniel Gil
Special Commercial Property General Adjuster
dan.gil@farmersinsurance.com
(858) 342-6465

CC: JAMES TUCKER
Enclosure(s):
General Supporting Documents -



**FARMERS**
**INSURANCE**

**Truck Insurance Exchange**

| | |
|---|---|
| **Claim #:** | 3010826880 |
| **Insured:** | Barnes |
| **GA:** | Daniel Gil |
| **DOL:** | 5/15/2018 |

Tuesday, February 11, 2020

| BUILDING COVERAGE | BUILDING STATEMENT OF LOSS |
|---|---|

| Description of Building Damage: | Policy limit: | $2,049,400.00 | |
|---|---|---|---|
| Locksmith - Martin Lock & Safe inv # 84969 | | | $522.80 |
| Security 5/25 - 6/2 and General Repairs | | | $7,679.42 |
| HVAC Service Call 6/6/18 - Ron's HVAC | | | $381.00 |
| Security 6/3 - 6/9 and General Repairs | | | $5,460.00 |
| Temp Fence and Emerg Svcs - City of A. V. | | | $25,145.00 |
| HVAC Service Call 6/8/18 - Ron's HVAC | | | $155.00 |
| Security camera wiring and repair - CTS | | | $5,620.75 |
| Elevator service call and repair - KONE | | | $3,048.50 |
| Security 6/10 - 6/16 and General Repairs | | | $5,460.00 |
| Debris Removal Dumpster Fee - City of A. V. | | | $1,963.52 |
| Security 6/17 - 6/23 and General Repairs | | | $5,460.00 |
| Security camera wiring and repair 2 - CTS | | | $6,234.50 |
| Debris Removal Fee - Rogelio Sanchez | | | $1,850.00 |
| Elevator service call and phone repair - KONE | | | $786.04 |
| Cleaning Fee - Team One Mgmt invoice 152-X | | | $550.00 |
| Carpet Cleaning - Team One Mgmt | | | $300.00 |
| Elevator Phone Replacement - KONE | | | $990.00 |
| Emergency Services - ACI | | | $28,476.66 |
| Building Repair Estimate | | | $926,486.57 |
| MEP Engineering Services - SAMS Engineering | | | $16,800.00 |
| DVR, Modem, DSL and Camera repairs - CTS | | | $1,395.00 |
| HVAC air purifier replacement - Ron's HVAC | | | $5,160.00 |
| Fire sprinkler emerg repair - FAST | | | $728.96 |
| Fire sprinkler emerg service call - FAST | | | $456.07 |
| HVAC service call - Ron's HVAC | | | $155.00 |
| Structural Engineering - Hansen Engineering | | | $30,723.34 |
| Structural Eng. Plan Check - Hansen Eng. | | | $3,142.65 |
| Sprinkler Repair invoice - Sanchez Gardening | | | $980.00 |
| Main water line repair - MMS | | | $755.00 |
| Water line repair - MMS | | | $155.00 |
| HVAC Ecnomizer (2) - Ron's HVAC | | | $2,300.00 |
| Locksmith at Bathrooms - Martin Lock | | | $188.40 |
| Sprinkler Repair 2 invoice - Sanchez Gardening | | | $3,080.00 |
| Irrigation Repairs - Sanchez Gardening | | | $3,080.00 |
| Carpet Cleaning - Team One Mgmt inv. #156 | | | $280.00 |
| Sprinkler/irrigation Repairs - Sanchez Gard. | | | $3,050.00 |
| Security camera wiring - CTS invoice 3893 | | | $1,490.00 |
| Building Repair Supplement - ACI Const. | | | $347,907.33 |

| | | | | |
|---|---|---|---|---|
| CR&R Hallway | | | | $782.70 |
| Saw Cutting | | | | $800.00 |
| Cement removal and dumpster | | | | $100.00 |
| Carpet install - New York Carpets | | | | $2,670.00 |
| Carpet materials - New York Carpets | | | | $6,117.00 |
| Ken Lowe - KPLA Engineering/Architect Fees | | | | $13,231.31 |
| City Inspection Fees | | | | $1,500.00 |
| Matson Architectural Fees | | | | $6,532.69 |
| Gardner Fee | | | | $1,310.00 |
| Gardner Fee | | | | $12,255.00 |
| Janitorial Cleaning Fee | | | | $410.00 |
| Heating and Air Service - Ron's | | | | $550.00 |
| Plumbing Service Fee | | | | $315.00 |
| Building Repair Supplement 2 - ACI Const. | | | | $190,571.72 |
| **Building Coverage Sub-Total:** | | | | **$1,685,541.93** |

| | | | | |
|---|---|---|---|---|
| Outdoor Property : | *Policy limit:* | **$2,500.00** | | |
| Trees, Plants, Shrubs - Sanchez Gardening | | | | $100.00 |
| | | | | |
| **Outdoor Property Sub-Total:** | | | | **$100.00** |

| | | | | |
|---|---|---|---|---|
| Bldg Ordinance or Law (Code Improvements) | *Policy limit:* | **$78,000.00** | | |
| Bldg Ordinance or Law (Code Improvements) | | | | $53,068.75 |
| Bldg Ordinance or Law 2 (Code Improvements) | | | | $26,824.65 |
| Excess Loss Amount Beyond Limit | | | | -$1,893.40 |
| **Bldg Ordinance or Law Sub-Total:** | | | | **$78,000.00** |

| | | |
|---|---|---|
| **Replacement Cost Grand Total:** | | **$1,763,641.93** |
| | | |
| <Less Recoverable Depreciation> | | $0.00 |
| <Less Non-Recoverable Depreciation> | | |
| **Actual Cash Value** | | **$1,763,641.93** |
| | | |
| <Less Deductible - Partially Absorbed by Excess Loss | | $8,106.60 |
| **Total Amount Due:** | | $1,755,535.33 |

| | Date of Payment | Amount of Payment |
|---|---|---|
| <Less prior payments:> | 6/4/2018 | $8,202.22 |
| <Less prior payments:> | 6/11/2018 | $5,841.00 |
| <Less prior payments:> | 6/18/2018 | $39,429.25 |
| <Less prior payments:> | 6/19/2018 | $1,963.52 |
| <Less prior payments:> | 6/29/2018 | $11,694.50 |
| <Less prior payments:> | 7/5/2018 | $2,636.04 |
| <Less prior payments:> | 7/17/2018 | $1,840.00 |
| <Less prior payments:> | Paid to ACI | $28,476.66 |
| <Less prior payments:> | 7/24/2018 | $820,879.66 |
| <Less prior payments:> | Paid to SAMS Eng | $16,800.00 |
| <Less prior payments:> | 7/26/2018 | $7,740.03 |
| <Less prior payments:> | 8/1/2018 | $155.00 |
| <Less prior payments:> | Paid to Hansen Eng | $30,723.34 |
| <Less prior payments:> | Paid to Hansen Eng | $3,142.65 |
| <Less prior payments:> | 9/27/2018 | $1,890.00 |
| <Less prior payments:> | 10/26/2018 | $2,488.40 |
| <Less prior payments:> | 11/29/2018 | $3,080.00 |
| <Less prior payments:> | 2/26/2019 | $3,360.00 |
| <Less prior payments:> | 5/9/2019 | $4,640.00 |
| <Less prior payments:> | 5/20/2019 | $400,976.08 |
| <Less prior payments:> | | |
| <Less prior payments:> | | |
| **This Payment:** | | **$359,576.98** |